**Wayne G. WOODS, Appellant,**

v.

**Herman SOLEM, Warden of the South Dakota State Penitentiary; & Roger Tellinghuisen, Attorney General of the State of South Dakota, Appellees.**

No. 88–5341.

United States Court of Appeals, Eighth Circuit.

Submitted May 9, 1989.

Decided Dec. 6, 1989.

Rehearing and Rehearing En Banc Denied Jan. 10, 1990.

Frances R. Becker, Rapid City, S.D., for appellant.

Richard D. Coit, Pierre, S.D., for appellees.

Before JOHN R. GIBSON, and MAGILL, Circuit Judges, and HEANEY, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Wayne Woods, convicted of first-degree murder and sentenced to life imprisonment, appeals from the district court's [1] denial of his petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254 (1982). Woods challenges the trial court's refusal to issue a jury instruction defining self-defense and justification. The two issues in this appeal are whether the trial court's instructions either violated due process by improperly removing an issue from the jury's consideration, or unconstitutionally eased the State's burden of proving every element of first-degree murder beyond a reasonable doubt. Finding no error, we affirm the judgment of the district court.

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

At approximately noon on November 7, 1983, Woods first broke into the residence of James Everett. After stealing a number of items from Everett's house, Woods drove to Rapid City, South Dakota. In Rapid City, Woods met a fourteen-year-old boy, Ruben Garcia. Woods, accompanied by Garcia, later returned to Everett's home to steal more things. The pair entered the residence at about 5:00 p.m.; while they were in the house, Everett returned.[2] Woods and Garcia then ran out the front door of the house and into the adjacent woods. From the woods, they watched Everett go from room to room, turning on and off lights. They then saw him leave the house, walk over to Woods' car, kneel down, look at the license plate, and go back into the house.

Garcia and Woods offered different versions of the events which followed. Woods' account comes from his statements given to Deputy Sheriff Juso, who testified about them at trial. According to this testimony, Woods went to the Everett house, opened the back screen door, stepped into the house, and heard the screen door close behind him. (Tr. 120–21). Everett then came around a corner in the hallway, and crouched while holding a gun with both hands and pointing it at Woods. (Tr. 121). Woods attempted to say Everett's first name, "Jim," but did not have enough time to do so. (Tr. 127). Instead, Woods pulled a revolver from inside his left jacket pocket, fired a shot at Everett, and ran outside. (Tr. 120–21). That shot killed Everett. On cross-examination, Juso testified that, when Woods returned to the house, he intended to confess or apologize to Everett, whom Woods knew. (Tr. 126).

The Supreme Court of South Dakota, in reviewing the direct appeal of Woods' conviction, offered the following description of Garcia's testimony:

As Everett examined his losses, Garcia said they made plans. Garcia offered, "Let's get in the car and take off," to which Woods replied, "No, he's already got my license number." Woods then said, "Well, I don't want to get caught so we're going to have to shoot him." Woods asked Garcia if he would like to shoot Everett and when Garcia said he could not, Woods said, "Well, I'm going to have to do it." Woods then approached the back door, peeked through the window, and waited for Everett with his gun drawn. Garcia testified that Woods then swung the door open, stepped in, and fired. This shot ended the life of James Everett.

*State v. Woods,* 374 N.W.2d 92, 95 (S.D. 1985).

Woods was tried and convicted of first-degree murder. Although he offered a jury instruction relating to justifiable homicide and self-defense, the trial court refused it. On direct appeal, the South Dakota Supreme Court affirmed Woods' conviction. In rejecting Woods' argument that he was entitled to a self-defense instruction, the South Dakota Supreme Court stated:

Appellant Woods was a gun-wielding burglar who entered Everett's house not once—but twice—to steal therefrom. It is therefore beyond contention that Woods was the aggressor. Generally, the aggressor, or the one who produces the circumstances which make it necessary to take another's life, is not entitled to assert self-defense. When Everett surprisingly returned and Woods ran from the home, the burglary was not over and Woods was not suddenly restored to his pre-aggression right of self-defense. . . .

Woods, the burglar, who could have driven his car away after Everett returned, can hardly claim danger to himself by remaining on the premises and stalking the homeowner by peering through the window—waiting for the opportunity to kill.[3] Appellant wishes to

---

2. At trial, Garcia claimed that only Woods entered the house.

3. This sentence could be interpreted as rejecting the story told by Woods in favor of the one told by Garcia. However, we do not believe that this sentence is critical to the analysis of the South Dakota Supreme Court. Rather, the court stressed the fact that Woods never left the vicinity of the house between the time that he broke into the house at 5:00 p.m. and the time when

elevate himself, in law, to a self-defense status such as that belonging to Everett. This cannot be. The trial court's refusal to instruct on justifiable homicide was not in error.

*Id.* at 97 (citations omitted) (footnote added).

On January 22, 1986, Woods filed a petition for state habeas corpus relief. His petition was denied by both the state trial court and the State Supreme Court, *Woods v. Solem,* 405 N.W.2d 59 (S.D.1987).[4]

After Woods filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254, a report and recommendation was prepared by a magistrate.[5] The magistrate questioned the South Dakota Supreme Court's characterization of Woods' third entry into the house as a continuation of the burglary, but concluded that it was a continuation of the initial provocation by Woods. The magistrate stated that, even though Woods' motive in returning might have been innocent, that motive "does not alter the fact that he was responsible for the continuing atmosphere of fear and apprehension which caused the decedent to react as he did." The magistrate recognized that the decision of the South Dakota Supreme Court became part of the substantive law of South Dakota, and concluded that:

> When petitioner's account of what happened is viewed against the background of this rule, reasonable minds can only conclude that he was still cloaked with the mantle of an aggressor at the time of the shooting and thus stripped of any right of self-defense.

he shot Everett. The court also emphasized the fact that Woods illegally entered the house for a third time rather than leave the area.

4. It is not clear that Woods has exhausted the claims which are asserted in this federal habeas corpus petition. However, the State does not argue lack of exhaustion, and we exercise our discretion to consider the merits of Woods' claims. *See Granberry v. Greer,* 481 U.S. 129, 131–36, 107 S.Ct. 1671, 1673–76, 95 L.Ed.2d 119 (1987). *Cf.* Rule 5 of the Rules Governing § 2254 Cases (an answer in a habeas corpus case should indicate whether state remedies have been exhausted).

5. The Honorable Thomas Parker, United States Magistrate for the District of South Dakota.

The magistrate further reasoned that errors in jury instructions are not generally of a constitutional magnitude unless they contain a fundamental defect which so infected the entire trial that the resulting conviction violated due process. He held that the failure to give the self-defense instruction did not violate due process because the evidence of guilt, when viewed in the framework of the applicable law, was overwhelming.

## II.

Woods argues that he had a constitutional right to have the jury consider his claim of self-defense. He claims that only the slightest amount of evidence is necessary to merit the giving of such an instruction, and that the evidence in this case established that he was attempting to apologize when confronted by Everett. While he recognizes the general rule that an aggressor is not entitled to a self-defense instruction, he contends that when a former aggressor returns and does not attempt to harm the other party, he may lawfully defend himself.[6]

We have held that a state trial court's failure to give a self-defense instruction violated a petitioner's right to due process. *United States ex rel. Means v. Solem,* 646 F.2d 322, 328 (8th Cir.1980). We there observed that a defendant in a criminal case is entitled to such an instruction if there is evidence to support it, if a proper request is made, and if the instruction properly states the applicable law. *Id.* In

6. Woods claims that the decisions in *Norrell v. State,* 116 Ga.App. 479, 157 S.E.2d 784 (1967); *People v. Humble,* 18 Ill.App.3d 446, 310 N.E.2d 51 (1974); *Walston v. State,* 597 P.2d 768 (Okla. Crim.App.1979); and *Gray v. State,* 203 Tenn. 332, 313 S.W.2d 246 (1958), demonstrate that he was entitled to a self-defense instruction. This argument lacks weight because Woods has cited no South Dakota cases in support of it, and because the Supreme Court has clearly stated that the constitutionality of a State's self-defense doctrine is not determined "by cataloging the practice of other States." *Martin v. Ohio,* 480 U.S. 228, 236, 107 S.Ct. 1098, 1103, 94 L.Ed.2d 267 (1987).

*Means*, because there was a disputed question of fact for the jury to decide under proper instructions, we affirmed the district court's decision granting the writ. *Id.* at 328–32.

In reviewing Woods' claims, we initially observe that we may grant the writ only when there is a violation of the Constitution, laws, or treaties of the United States, and that we do not review questions of state law in habeas corpus proceedings. 28 U.S.C. § 2254(a). *See also Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions under [state] law, they allege no deprivation of federal rights and may not obtain habeas relief.").

Thus, to the extent that Woods is arguing that South Dakota should have adopted a different self-defense doctrine, he misses the essential target. On the other hand, if Woods is entitled to a self-defense instruction under South Dakota law, the trial court's refusal to issue such an instruction violated due process.

■ In this case, however, Woods has not demonstrated that there was a denial of due process. The Supreme Court of South Dakota, when affirming Woods' conviction on direct appeal, held that Woods was an aggressor, that the burglary was not over when he shot Everett, and that he was not restored to his pre-aggression right of self-defense. These are conclusions of state law that we may not reexamine, and we see no due process violations in such holdings. In reaching this conclusion, we are cognizant of the fact that South Dakota's rule is not unusual; although the details of the doctrine may vary from state to state, virtually every jurisdiction precludes aggressors from claiming self-defense. *See generally* 40 Am.Jur.2d *Homicide* §§ 145, 146, 150 (1968).

■ Woods also argues that there is sufficient evidence to support a finding that he lost his status as an aggressor because he returned to the house to apologize. There is no evidence, however, that when Woods entered the house for the third time he either knocked on the door or made any statement to alert Everett that he was returning to apologize. Rather, the uncontradicted evidence indicates that Woods entered the house without knocking, took two steps inside Everett's house, and shot Everett without saying a word. Viewing the evidence most favorably to Woods, he simply had an *unexpressed* intention to apologize.[7] While the South Dakota Supreme Court's description of the evidence may differ somewhat from our reading of the record, its conclusion that there was not sufficient evidence to support a self-defense instruction is not constitutionally infirm, and is well supported by the record in this case.

As a matter of state law on the facts of this record, Woods' unexpressed intention did not entitle him to a self-defense instruction. We conclude that there was no constitutional error in either the Supreme Court of South Dakota's discussion of the applicable law or its determination that the evidence did not support such an instruction.

We recognize that the Supreme Court of South Dakota, in *Conaty v. Solem*, 422 N.W.2d 102 (S.D.1988), held that a self-defense instruction should be submitted to the jury if there is the slightest amount of evidence in support of it. *Id.* at 105. Even that standard is not met in this case, because the only evidence to which Woods can point is his unexpressed intention to apologize to Everett. Although Woods also argues that the prosecutor's argument was prejudicial, we conclude that the prosecutor's argument was based upon the instructions which were properly presented to the jury.

---

**7.** In *State v. Huemphreus*, 270 N.W.2d 457 (Iowa 1978), the Iowa Supreme Court held that an unexpressed intention to withdraw from a fight did not entitle a defendant to a self-defense instruction. *Id.* at 462–63.

### III.

While Woods argues that the trial court's rulings eased the State's burden of proving, beyond a reasonable doubt, that Everett was killed without authority of law, it is evident that the instructions were proper. The jury was specifically instructed that an essential element of the crime of first-degree murder was "[t]hat the killing was without authority of law and without justification." [8] The jury was also instructed that the State bore the burden of proving, beyond a reasonable doubt, every element of the crime.[9] Finally, the jury was specifically instructed that the burden of proof never shifted to the defendant but, rather, rested upon the State throughout the entire trial.[10]

The cases upon which Woods relies do not dictate a contrary conclusion. The decisions in *United States v. White Horse,* 807 F.2d 1426 (8th Cir.1986), and *United States v. Voss,* 787 F.2d 393 (8th Cir.), *cert. denied,* 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986), were rendered upon direct appeal of convictions for violations of federal law. This case, in contrast, is a collateral attack on a state conviction. *See* 28 U.S.C. § 2254. This distinction is significant because "[n]ot every trial error that might result in reversal of a federal conviction on direct appeal would mandate the same result in a section 2254 review of a state court conviction, where we may consider only errors of constitutional magnitude." *Newlon v. Armontrout,* 885 F.2d 1328, 1336 (8th Cir.1989).

The two habeas corpus cases Woods cites, *Means,* 646 F.2d 322, and *Zemina v.*

*Solem,* 438 F.Supp. 455 (D.S.D.1977), *aff'd,* 573 F.2d 1027 (8th Cir.1978), were cases in which there was evidence to support the submission of the self-defense instruction. *Cf. White Horse,* 807 F.2d at 1427–32. In this case, the evidence simply did not support such an instruction.

The trial court's refusal to give a self-defense instruction, which would not have been supported by the evidence, did not violate the due process clause. Similarly, the trial court's instructions adequately indicated that the State was required to prove every element of first-degree murder beyond a reasonable doubt. Therefore, the district court's judgment denying the writ is affirmed.

---

**8.** Jury Instruction No. 7 stated that:
  The essential elements of the offense of murder as charged in the indictment, each of which the State must prove beyond a reasonable doubt, are:
  1. That the defendant at the time and place alleged in the indictment inflicted an injury or injuries upon the deceased from which the deceased died.
  2. That the defendant did so with premeditated design to effect the death of the deceased.
  3. That the killing was without authority of law and without justification.

**9.** Jury Instruction No. 4 stated that:

The burden of proof rests upon the State to prove all the material allegations of the indictment and each and every material element of the offense charged beyond a reasonable doubt, and such burden of proof never shifts to the defendant but rests upon the State throughout the trial of the case to prove the defendant guilty of the offense charged by proof beyond a reasonable doubt. A mere preponderance of the evidence is not enough. In case of a reasonable doubt as to whether the defendant's guilt is shown by the evidence, he must be acquitted.

**10.** *See* Instruction No. 4, *supra* n. 9.