Steven M. HARRISON, Appellant,

v.

John DAHM, etc., et al, Appellees.

No. 89–2218.

United States Court of Appeals,
Eighth Circuit.

July 26, 1990.

Rehearing Denied Aug. 23, 1990.

Robert G. Dailey, Omaha, Neb., for appellant.

Elaine A. Catlin, Lincoln, Neb., for appellees.

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

On the Court's own motion, the opinion and judgment issued on June 7, 1990, are withdrawn and the attached opinion is being filed in its stead.

It is further ordered that the order of July 19, 1990, denying the petition for rehearing as being untimely filed is vacated.

Appellant's petition for rehearing is denied without prejudice.

Before McMILLIAN and BEAM, Circuit Judges, and LARSON,* District Judge.

BEAM, Circuit Judge.

Steven M. Harrison appeals from the judgment of the district court dismissing his action, brought pursuant to 42 U.S.C. § 1983 (1982), against the warden of the Lincoln Correctional Center, where Harrison is incarcerated, and against members of the center's disciplinary committee and appeals board. Harrison alleged that actions taken by defendants at a disciplinary hearing at which Harrison was found guilty of using marijuana while at the center violated his right to due process. The district court held that the members of the appeals board were entitled to absolute immunity and dismissed the claims against them. As to the members of the disciplinary committee, the district court held that their actions did not violate due process. Alternatively, the district court held that the disciplinary committee members were entitled to qualified immunity, and, accordingly, dismissed the claims against them. The district court also dismissed the claim against the warden because the record contained no evidence that he was personally involved in the disciplinary proceeding. We affirm.

## I. BACKGROUND

On January 26, 1987, Harrison and several other inmates were near a recreational area at which location officer Fred Britten of the Lincoln Correctional Center smelled marijuana. Based on his observations,

Britten requested that Harrison be required to submit a urine specimen for testing; the specimen was obtained that same day. Harrison was notified on January 27 that he was charged with drug abuse in violation of the center's rules, and that a hearing would be held on January 29.

Defendants Leapley, Loock and Percival, the disciplinary committee, presided at the hearing. Given Britten's observations and the positive results of an enzyme multiplied immunoassay technique (EMIT) test done on Harrison's urine, the disciplinary committee found Harrison guilty of class I misconduct for drug abuse and penalized him with a twenty-one day room restriction and the loss of forty-five days of good time. Harrison asked for a copy of the test results at the hearing, but his request was refused although he was permitted to view the record containing the test results. He also asked to view the evidence log, in which the chain of custody of the urine specimen was recorded, but his request was again refused. The decision of the disciplinary committee was upheld by the appeals board, consisting of defendants Kramer, Camp and Hruza.

Harrison then filed, on December 2, 1987, this section 1983 action in district court, alleging that his right to due process was violated because he did not get written notice of the test results prior to the hearing, because he was not given a copy of the results or allowed to view the evidence log at the hearing, and because the single EMIT test was uncorroborated by a second test. The district court denied Harrison's motion for summary judgment as well as defendants' cross-motion for summary judgment, and referred the case to the United States Magistrate. The magistrate held a hearing on February 23 and 24, 1989, and recommended that the case be dismissed because Harrison's right to due process had not been violated, and, alternatively, because all defendants were entitled to immunity, either absolute or qualified. The district court dismissed the action on June 15, 1989.[1]

---

1. In *Offet v. Solem*, 823 F.2d 1256, 1258 (8th Cir.1987), we held that a state prisoner who directly attacks the fact or length of his confinement and seeks restoration of good time or money damages should do so by seeking a writ of habeas corpus, which requires exhaustion of state remedies. When confronted with a section 1983 action that challenges the fact or length of a prisoner's confinement, then, the district court should either stay or dismiss the section 1983 action if plaintiff has not exhausted state remedies. *Cf. id.* at 1258 and n. 2 (district court should stay) and *Jones v. Smith*, 835 F.2d 175, 176 (8th Cir.1987) (same) *with Lindsey v. Wells*, 901 F.2d 96, 97 (8th Cir.1990) (district court may dismiss without prejudice).

Because Harrison seeks restoration of lost good time as well as money damages, this case fits squarely within the principles established in *Offet*. This case differs from *Offet*, however, for the record contains no indication either that Harrison exhausted his state remedies, or that the state raised the exhaustion requirement as a defense. In *Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), the Supreme Court held that the state's failure to raise an exhaustion defense may constitute a waiver in some cases.

[T]here are some cases in which it is appropriate for an appellate court to address the merits of a habeas corpus petition notwithstanding the lack of complete exhaustion. Although there is a strong presumption in favor of requiring the prisoner to pursue his available state remedies, his failure to do so is not an absolute bar to appellate consideration of his claims.

*Id.* at 131, 107 S.Ct. at 1673–74. The Court declined, however, to *require* either that the district court dismiss for non-exhaustion, or that it regard the state's omission as an absolute waiver. *Id.* at 133, 107 S.Ct. at 1674. Instead, · [t]he State's omission in such a case makes it appropriate for the court of appeals to take a fresh look at the issue. The court should determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim.

*Id.* at 134, 107 S.Ct. at 1674.

Thus, in section 2254 cases in which the district court has not considered exhaustion, but has instead rendered a decision on the merits of the petition, we have held that *Granberry* gives us discretion to consider the merits as well. *See, e.g., Woods v. Solem*, 891 F.2d 196, 198 n. 4 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1952, 109 L.Ed.2d 314 (1990); *Chitwood v. Dowd*, 889 F.2d 781, 784–85 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2219, 109 L.Ed.2d 545 (1990); *McDonald v. Black*, 820 F.2d 260, 261 n. 3 (8th Cir.1987). And we have just recently extended this principle to section 1983 actions which are subject to the requirements of *Offet*. In *Fruit v. Norris*, 905 F.2d

**40**

## II. DISCUSSION

■ We agree with the district court that the members of the disciplinary committee were entitled to qualified immunity because the law was not clearly established that the actions taken by the committee involving the use of the test, the record of the test and the evidence log violated Harrison's right to due process. The standard for qualified immunity is well established. In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The Court made clear that while money damages may be the only available remedy for someone whose constitutional rights are violated, that fact must be balanced with the substantial social costs of litigating claims, many of them insubstantial, against public officials. *Id.* at 814, 816, 102 S.Ct. at 2736, 2737. Thus, in *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court emphasized that qualified immunity serves to avoid the costs of litigation early in the proceedings, before extensive discovery. The Court cautioned that the rule of *Harlow,* that " 'insubstantial claims' against government officials be resolved prior to discovery and on summary judgment if possible," *id.* at 640 n. 2, 107 S.Ct. at 3039 n. 2, should not be "transformed from a guarantee of immunity into a rule of pleading." *Id.* at 639, 107 S.Ct. at 3038. *See also Russell v. Hardin,* 879 F.2d 417, 420 (8th Cir.1989) (qualified immunity seeks to dispose of insubstantial claims without trial).

■ The Supreme Court in *Harlow* adopted a standard for qualified immunity which inquires into the "objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. As stated in *Anderson,* an official is not entitled to qualified immunity if the contours of the right allegedly violated are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. This standard does not inquire into the subjective good faith of public officials, but does require that the particular circumstances of the officials' conduct be examined. *Coffman v. Trickey,* 884 F.2d 1057, 1063 (8th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1523, 108 L.Ed.2d 763 (1990).

Thus, in determining whether the disciplinary committee members were entitled to qualified immunity, we must do more than merely decide that Harrison had a clearly established right to due process at the disciplinary hearing. *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038. The Court in *Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974), made that much clear. Rather, we must consider whether it was clearly established that defendants' conduct violated Harrison's right to due process. *Givens v. Jones,* 900 F.2d 1229, 1232 (8th Cir.1990). So long as there remains a legitimate question as to whether Harrison's right to due process was violated by the particular actions of defendants, their conduct cannot violate clearly established law, and they will be entitled to qualified immunity. *Tyler v. Barton,* 901 F.2d 689, 691 (8th Cir. 1990) (per curiam) (citing *Brown v. Frey,* 889 F.2d 159, 165 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990)).

■ As indicated, Harrison claims that his due process rights were violated by the disciplinary committee's failure to give him written notice of the test results prior to

1147, 1148 n. 3 (8th Cir.1990), we held that: "If the State fails to raise exhaustion, in appropriate circumstances, a federal court may hold that the State has waived exhaustion."

We think that this case does not present "an issue on which an unresolved question of fact or of state law might have an important bearing," such that "both comity and judicial efficiency may make it appropriate for the court to insist on complete exhaustion to make sure that it may ultimately review the issue on a fully informed basis." *Granberry,* 481 U.S. at 134–35, 107 S.Ct. at 1675–76. Accordingly, we consider the merits of Harrison's petition.

the disciplinary hearing, by their failure to provide him with a copy of the results and to let him view the evidence log at the hearing, and by their failure to administer a second, corroborative EMIT test. As to written notice of the test results, it is established law that Harrison is only entitled to advance written notice of the alleged disciplinary violation. *Wolff*, 418 U.S. at 563, 94 S.Ct. at 2978. Harrison does not dispute that he received such notice on January 27, 1987. Rather, he claims that he was entitled to notice of the test results prior to the hearing, and that he was unable to defend himself without such notice. This argument is premised, however, not on any established law, but rather on Harrison's contention that he could not anticipate the result, and, therefore, could not defend himself. As he puts it: "A party who expects to receive a negative EMIT test result is going to be unfairly surprised by a positive test result sprung on him at the time of the hearing." Brief for Appellant at 13.

Not only is it beyond belief that Harrison could not anticipate that the test results would be positive, but, as earlier stated, his argument lacks any support in the case law. *Wolff* requires only that Harrison be given written notice of the charges against him no less than twenty-four hours before the hearing. *Wolff*, 418 U.S. at 564, 94 S.Ct. at 2978. He got written notice on the morning of January 27 that he was charged with "5–5 I–H Drug or Intoxicant Abuse," and that the hearing was set for the morning of January 29. *Wolff* simply does not require that the test results be included in the written notice, and Harrison does not cite us to any cases which establish that reasonable disciplinary committee members should have thought that failure to give such notice violated a due process right.

Nor does Harrison cite to us any cases which establish his right to receive a copy of the test results or to view the evidence log. As to the test results, Harrison was informed at the disciplinary hearing that the EMIT test was positive for marijuana, and was given an opportunity to view the card on which the test result was recorded.

Transcript of Hearing before U.S. Magistrate at 81, 125, 188. Harrison did not seek out the test result before the hearing, as he could have done, *id.* at 128, 153–55, and he asked no questions about the result when shown the result card at the hearing. *Id.* at 188. Due to cost and confidentiality, it was standard procedure not to provide a copy of the result card to prisoners. *Id.* at 81–82. As to the evidence log, in which the chain of custody of the urine specimen was recorded, Harrison was not allowed to view the log as a matter of policy based on the orderly administration of the correctional center.

■ In the context of an inmate's right to call witnesses and produce documentary evidence, the Supreme Court has noted that deference is often due to prison officials, and that the due process clause does not deprive them of discretion by subjecting them to "unduly crippling constitutional impediments." *Wolff*, 418 U.S. at 566–67, 94 S.Ct. at 2979–80. Accordingly, some deference is due to defendants' claims that their actions were dictated by administrative necessity. Thus, it is not established that prison officials are required to supply an inmate with a copy of test results or to let him view the evidence log.

■ Finally, Harrison argues that the single, uncorroborated EMIT test failed to establish even "some evidence" of guilt, *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985), and thus was so insufficient as to deny him due process. In *Spence v. Farrier*, 807 F.2d 753, 756 (8th Cir.1986), we considered whether the EMIT test provides some evidence of drug use sufficient to satisfy due process, and held that it did. In *Spence*, this court relied on, among other cases, our decision in *Harmon v. Auger*, 768 F.2d 270, 276 (8th Cir.1985), which found that EMIT test results are roughly 95% accurate. Hence, we held in *Spence* that "the EMIT test, as used at Iowa State Penitentiary with a confirmatory second test, contains sufficient indicia of reliability to provide some evidence of drug use." *Spence*, 807 F.2d at 756.

**42**

Harrison argues that we held in *Spence* that the EMIT test satisfies due process only when confirmed by a second test. While the EMIT test at issue in *Spence* was confirmed by a second test, we do not read our holding so narrowly. Indeed, one of the cases cited in *Spence, Jensen v. Lick,* 589 F.Supp. 35 (D.N.D.1984), involved only one, uncorroborated EMIT test. *Spence,* 807 F.2d at 756. Thus, we held that, while conceivable that an inmate could be unjustly disciplined based on EMIT test results, "the margin of error is insignificant in light of institutional goals." *Id.* Moreover, the record in this case contains testimony by the medical technologist who administered the test. She testified that her machine is calibrated at a standard twice as high as that of some laboratories, and requires a greater concentration of marijuana in the urine to test positive. Transcript of Hearing at 14–15. Thus, given that *Spence* does not require a second test, and given the established and recognized reliability of the test, it is not a due process violation to fail to administer a second test.

## III.  CONCLUSION

Accordingly, the district court properly dismissed the case against the disciplinary committee members based on qualified immunity. The claims against defendants Camp, Kramer and Hruza, the members of the appeals board, were properly dismissed based on absolute immunity. And the claim against Dahm, the warden, was properly dismissed because there was no evidence of his personal involvement in the proceeding. Thus, the judgment of the district court is affirmed.