# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3665
_____

|  |  |  |
|---|---|---|
| Stacey A. Lannert, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Patricia Jones, Superintendent of | * | |
| Chillicothe Correctional Center, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  September 9, 2002

Filed:  March 11, 2003
_____

Before WOLLMAN, HEANEY, and BYE, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Stacey A. Lannert appeals the district court's[1] judgment denying her petition for writ of habeas corpus.  We affirm.

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

# I. Background

As set forth by the Missouri Court of Appeals, the following evidence was presented at trial:

The facts viewed in the light most favorable to the verdict reveal that Defendant, 18-year-old Stacey Lannert, was living with her father, Tom Lannert, and her 14-year-old sister at the time of the killing. Her mother and father were divorced, and her mother had remarried and was living in Guam. After the divorce, Defendant and her sister would live intermittently with their mother or father. Defendant's sister had also previously lived with other relatives.

Defendant claimed during trial that her father had sexually abused her approximately since she was in the third grade. Additionally, she claimed he was an alcoholic with a violent temper. Until shortly before the killing, Defendant had been living with her mother in Guam. Upon returning, she began to speak with friends about wishing her father were dead. She talked about either killing him herself or having him killed. A friend, Ron Barnett, told her what to do to her father's car so that it would explode when he was in it. This plan did not work, so Barnett then advised her how to shoot her father in such a way that the police would suspect a burglar did it. Defendant later brought a rifle to her grandparent's home in Illinois to practice using it.

Also around the time of Defendant's return from Guam, she began fraudulently using her father's credit cards and cashing checks on his bank account. She instructed male friends to pose as her father on the telephone when a check-cashing business would call to verify her authority to cash the checks. With the money she fraudulently received from the credit cards and checks, among other things she bought herself a car stereo, bought others gifts and dinners, paid Barnett's rent, and paid for the hotel in which she stayed the night of the murder.

Several days before the murder, Defendant told a friend, Jason Fortune, that her father owned a certificate of deposit worth at least

$100,000. She added that if he were to die, she would get that money. During trial, Fortune testified that Defendant had fantasized about what she could buy with all the money. In fact after his death, her father's estate was valued at $482,000, including a $100,000 certificate of deposit, a little under $50,000 in a savings account, and a life insurance policy with death benefits of $180,000.

On the day before the shooting, Defendant, her sister and several others went to the V.P. Fair and then to a restaurant to eat. At approximately 4:15 to 4:30 a.m. the next morning, Defendant and her sister returned home to get their dog, after which they were going to spend the night at a motel. Defendant did not enter her home through the door but through a basement window. In the basement, she saw the rifle leaning against a chair. In her subsequent confession to police, Defendant stated, "I decided at that moment that I was going to do it, I was going to kill him." She then walked upstairs and shot her father, first in the shoulder as he was lying "passed out" on the couch. This bullet broke his collar bone and awakened him. He jumped up and asked Defendant to phone for help. Defendant went downstairs to look for a phone but thought to herself, "He didn't deserve to live." She returned to find him again lying on the couch. She then took the rifle from where she had placed it and shot her father at point-blank range in the head, thereby killing him.

After the murder, Defendant took the rifle and left through the basement window in which she had entered the house. She and her sister spent the night at a motel, and the next day took the rifle to Barnett for him to dispose of. He sold the rifle to a friend and later informed the police to whom he sold it.

The next day, Defendant and Fortune went to her house and Defendant cleaned out her car. Then they staged a scene in which Fortune said loudly so neighbors could hear, "Stacey, call the police." Defendant then ran to a neighbor's home, upset and crying. The neighbor went to Defendant's house, discovered the body, and called for emergency help.

State v. Lannert, 889 S.W.2d 131, 133 (Mo. Ct. App. 1994).

Charged with murder in the first degree and other related felonies, Lannert argued at trial that she was not guilty by reason of mental disease or defect. Lannert also attempted to introduce "battered spouse syndrome" evidence pursuant to section 563.033 of the Missouri Code, which permits such evidence "upon the issue of whether the actor lawfully acted in self-defense or defense of another." Mo. Ann. Stat. § 563.033(1) (West 1999).[2] In a pre-trial ruling, the trial court "exclud[ed] anyone from mentioning in trial that defendant suffered from Battered Spouse Syndrome until such time as self-defense is injected into the case," but allowed Lannert "to make an offer of proof showing evidence injecting self-defense in order to mention Battered Spouse Syndrome in her opening statement and trial." The trial court also allowed Lannert to present evidence of her alleged abuse.

At the close of the evidence, the trial court refused to instruct the jury on self-defense. According to the court, "the defendant's testimony didn't indicate that she was in immediate fear of serious physical injury or death[,] . . . [as] her testimony was that her father was asleep and passed out and drunk, or at least asleep, and she knew that when she fired the first shot." Thus, the court concluded that "[t]here [was not] any basis in the evidence for self-defense."

The jury found Lannert guilty of murder in the first degree and armed criminal action. She was sentenced to life imprisonment without the possibility of probation or parole on the murder count. Lannert then appealed her conviction and sentence, as well as the denial of her motion for post-conviction relief.

---

[2]The Missouri Court of Appeals has recognized that the application of this statute is not dependent upon the marital status of the defendant, State v. Williams, 787 S.W.2d 308, 311-312 (Mo. Ct. App. 1990), and the parties apparently agree that the statute may also extend to battered children.

On appeal, Lannert claimed, inter alia, that the trial court erred in (1) overruling her motion to present battered spouse syndrome evidence on the issue of self-defense, and (2) refusing to instruct the jury on self-defense. Lannert, 889 S.W.2d at 134. With respect to the first claim, the Missouri Court of Appeals concluded that "[the] issue [was] not preserved for appeal," as "[the] [d]efendant presented no evidence of self-defense nor did she make an offer of proof." Id. After again citing this lack of evidence, the court also rejected Lannert's second claim.

After exhausting her opportunities for relief in the state courts, Lannert filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting six main grounds for relief. The district court denied the motion in its entirety, but issued a certificate of appealability on Lannert's claim that the trial court violated her Fifth, Sixth, and Fourteenth Amendment rights to due process and a fair trial by excluding evidence of battered spouse syndrome and in refusing to instruct the jury on self-defense.

II.  Standard of Review

A federal court may grant habeas relief pursuant to § 2254 "only if the adjudication of the claims on the merits by the state court 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts.'" Khaalid v. Bowersox, 259 F.3d 975, 978 (8th Cir. 2001) (quoting 28 U.S.C. § 2254(d) (2000)), cert. denied, 535 U.S. 1021 (2002). In considering the denial of a § 2254 habeas petition, "we review the district court's factual findings for clear error and its legal conclusions de novo." King v. Bowersox, 291 F.3d 539, 540 (8th Cir.) (internal quotation marks and citation omitted), cert. denied, 123 S. Ct. 693 (2002).

### III. Analysis

We first address the State's procedural default argument. According to the State, the Missouri appellate court's finding that Lannert had failed to preserve her evidence-related claim for appeal constitutes an "independent and adequate state ground" barring federal habeas review. See Ivy v. Caspari, 173 F.3d 1136, 1140 (8th Cir. 1999) ("Federal review of a habeas corpus petition is barred when a state court dismisses or rejects a prisoner's claims on independent and adequate state grounds unless the petitioner establishes cause for the default and actual prejudice resulting from the alleged violations of federal law." (citations omitted)). The district court disagreed, concluding that although it was a "close question," the appellate court's determination that Lannert "presented no evidence of self-defense" amounted to a review of the merits of the evidence-related claim. Lannert, 889 S.W.2d at 134; see Sweet v. Delo, 125 F.3d 1144, 1150 (8th Cir. 1997) ("When a state court decides an issue on the merits despite a possible procedural default, no independent and adequate state ground bars consideration of that claim by a habeas court." (citations omitted)); Hadley v. Caspari, 36 F.3d 51, 51 (8th Cir. 1994) ("Claims presented in a habeas corpus petition will not be procedurally barred so long as the state appellate court has given 'at least cursory consideration' to them." (citation omitted)). Although the question may be close, we agree with the district court that the Missouri appellate court in fact ruled on the merits of Lannert's evidence-related claim.

### A. Battered Spouse Syndrome Evidence

Lannert's first argument is based on the United States Supreme Court's decision in Hicks v. Oklahoma, 447 U.S. 343 (1980). In Hicks, the Court recognized that when a state creates a "substantial and legitimate expectation" of certain criminal procedural protections, an "arbitrary deprivation" of such entitlement may constitute an independent federal constitutional violation. Hicks, 447 U.S. at 346; see Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996). According to Lannert, Missouri's

battered spouse syndrome statute is a "state-created, federally-protected guaranty of the rights of the accused." Thus, Lannert argues, the trial court violated her due process rights when it concluded that her expert's testimony regarding the syndrome was inadmissible under the statute.

Our habeas review is limited "to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). We have repeatedly stated that "a mere violation of state law is not the automatic equivalent of a violation of the federal Constitution." Chambers v. Bowersox, 157 F.3d 560, 564 (8th Cir. 1998) (citation omitted). Lannert's Hicks argument is similar to that which we rejected in Chambers v. Bowersox. According to Lannert, her battered spouse syndrome evidence was excluded in violation of the Missouri statute, she had a right to expect that the statute would be properly applied, and, since that did not occur, she has been deprived of due process of law. Chambers, 157 F.3d at 564. In other words, "[Lannert] had a 'liberty interest' in the enforcement of the statute, which, in [her] view, mandated [admission] of the evidence." Id. As we stated in Chambers, however, Hicks "represent[s] a rather narrow rule: some aspects of the sentencing process, created by state law, are so fundamental that the state must adhere to them in order to impose a valid sentence." Id. at 565. This case simply does not fall within the narrow rule, and, as in Chambers, we reject the attempt to constitutionalize an alleged violation of state law.

Furthermore, even if Lannert's claim were reviewable under Hicks, we are not persuaded that the trial court's evidentiary ruling was erroneous under Missouri law.[3] Missouri's battered spouse syndrome statute "specifically requires self-defense

---

[3]We ordinarily would not reach this issue, as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68. However, because Lannert's battered spouse syndrome claim is interrelated with her self-defense claim, we will address her arguments regarding the evidentiary ruling. See infra Part III.B.

already be an issue in the case" before syndrome evidence is admissible. <u>State v. Anderson</u>, 785 S.W.2d 596, 600 (Mo. Ct. App. 1990). According to the Missouri Supreme Court, "[t]he right of self-defense is a person's privilege to defend himself against personal attack." <u>State v. Chambers</u>, 671 S.W.2d 781, 783 (Mo. 1984) (citation omitted). The court outlined the elements of the defense as follows:

> Deadly force may be used in self-defense only when there is (1) an absence of aggression or provocation on the part of the defender, (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life.

<u>Id.</u> (citations omitted). The Missouri Court of Appeals has recognized that "if the evidence of [battered spouse] syndrome is to have any meaning under [the statute] it must be as a modification of the mental state required of the battered woman." <u>Williams</u>, 787 S.W.2d at 312. More specifically, "it is that the syndrome creates a perception in the battered woman so that as to her the required elements [of self-defense] have been met." <u>Id.</u>; <u>see also</u> <u>State v. Edwards</u>, 60 S.W.3d 602, 614-15 (Mo. Ct. App. 2001) (discussing <u>Williams</u>, 787 S.W.2d at 308).

After reviewing the above-cited authority, the district court determined that under Missouri law, "[t]he [battered spouse syndrome] statute does not negate the first element of [self-]defense, i.e., that the defendant was not the initial aggressor."[4]

---

[4]As indicated in Part I of our opinion, the state trial court did not appear to focus on the "initial aggressor" element in refusing to instruct the jury on self-defense. Lannert, however, does not suggest that the district court erred in relying on an element that was not specifically cited by the trial court. Instead, Lannert argues that the evidence was sufficient to support a finding that Lannert's father was, indeed, the initial aggressor.

As discussed above, the evidence in this case indicated that Lannert shot her father while he was passed out on the couch. Although there was testimony that Lannert's father generally molested her after he had been drinking, there was no indication that he had abused her or had otherwise threatened her on the night of the murder. Thus, the district court concluded that because Lannert was the initial aggressor in the fatal encounter with her father, "the[] required elements of self-defense were absent in [her] case," and it therefore "was not erroneous under Missouri law to exclude the expert witness from testifying about 'battered spouse syndrome.'" We are satisfied that the district court's analysis is consistent with Missouri law. See Anderson, 785 S.W.2d at 599-600 (concluding that self-defense was not at issue where the defendant hired or lured the killers to the crime, had discussed the plan to kill her husband for more than three months prior to the murder, had discussed paying the assailants with a portion of her husband's insurance policy, and was not fending off an attack at the time of the murder); Williams, 787 S.W.2d at 312, 313 (noting that "[t]he courts have generally accepted the utilization of evidence of [battered spouse] syndrome where the killing occurs during or immediately after a battering incident" (citations omitted)); see also State v. Riley, 716 S.W.2d 416, 418 (Mo. Ct. App. 1986) ("[T]he right to defend oneself or to intervene to defend another does not imply the right to attack." (citation omitted)).

According to Lannert, "[a] man who rapes his daughter when she is in the third grade is the initial aggressor, and the author of his own doom." As the State notes in its brief, however, this assertion simply is not supported by Missouri law. We in no way minimize the physical and psychological trauma that Lannert suffered as a result of her father's abuse. However, as did the petitioner in Anderson v. Goeke, Lannert asks us "to ignore the Missouri court's analysis of Missouri statutory and decisional law, reevaluate the Battered Spouse Syndrome provision and the case law interpreting it, and arrive at a different conclusion." 44 F.3d 675, 681 (8th Cir. 1995). This we cannot do. See Bounds v. Delo, 151 F.3d 1116, 1118 (8th Cir. 1998) ("Determinations of state law made by the Missouri Court of Appeals are binding."

(citation omitted)). As the district court pointed out, there may be compelling policy reasons for lowering the evidentiary threshold that a defendant must meet in order to be entitled to introduce evidence regarding the existence and consequences of battered spouse/child syndrome. See, e.g., State v. Janes, 850 P.2d 495 (Wash. 1993), and authorities cited therein; R. Hegadorn, Clemency: Doing Justice to Incarcerated Battered Children, 55 J. Mo. B. 70 (March-April 1999). That is a decision for the Missouri Legislature and the Missouri courts to make, however, and not, as we point out below, a requirement of federal constitutional law. Accordingly, we reject Lannert's contention that the state trial court erred in concluding that the expert's testimony regarding battered spouse syndrome was inadmissible under section 563.033 of the Missouri Code.

Lannert also argues that "[e]ven in the absence of [section 563.033]," the exclusion of this evidence constituted an "independent constitutional violation," in that she was denied "her [right to] a fair trial and the right to a complete defense." The Supreme Court has long recognized that "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, . . . the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)) (internal citations omitted); see also Washington v. Texas, 388 U.S. 14, 19 (1967) (indicating that "the right to present a defense" is a "fundamental element of due process of law"). The right to introduce favorable evidence, however, is not without limit. See Taylor v. Illinois, 484 U.S. 400, 410 (1988). A defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Id. Thus, Lannert bears "the usual heavy burden" of demonstrating a due process violation: she must "establish that a defendant's right to have a jury consider evidence of [battered spouse syndrome evidence in connection with a self-defense claim] is a 'fundamental principle of justice.'" See Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (plurality)

(citing <u>Patterson v. New York</u>, 432 U.S. 197, 201-202 (1977)); <u>id.</u> at 58-59 (Ginsberg, J., concurring).

Lannert has failed to sustain this burden. She submits no argument or authority relating to the due process inquiry. Instead, she relies on case law recognizing her right to present favorable evidence to the jury, while ignoring the limitations on this right. Thus, given these limitations, as well as the absence of argument regarding the relevant issue, we simply cannot find that the exclusion of expert testimony regarding battered spouse syndrome "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>see also</u> <u>Hall v. Iowa</u>, 705 F.2d 283, 287 (8th Cir. 1983) ("The claim concerning the expert testimony about the blood spatter on [the defendant's] clothing, as well as the contention regarding the exclusion of psychological testimony, although alleging in conclusory terms 'a denial of due process,' do not state federal constitutional claims.").

## B. Self-Defense

Lannert next contends that the trial court erred in refusing to instruct the jury on self-defense. According to Lannert, this error also "violate[d] the Due Process Clause of the Fourteenth Amendment by denying her a fair trial and the right to a complete defense."

We agree, for the purposes of this appeal, that a defendant has a due process right to a self-defense instruction if the evidence satisfies the requirements of the applicable law on self-defense. <u>See</u> <u>Woods v. Solem</u>, 891 F.2d 196, 199 (8th Cir. 1989) (indicating that "if [a defendant] is entitled to a self-defense instruction under [state] law, the trial court's refusal to issue such an instruction violate[s] due process"); <u>see also</u> <u>Taylor v. Withrow</u>, 288 F.3d 846, 851 (6th Cir.) ("We hold that the right of a defendant in a criminal trial to assert self-defense is [a] fundamental

-11-

right[], and that failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the due process clause."), cert. denied, 123 S. Ct. 490 (2002); Everette v. Roth, 37 F.3d 257, 261 (7th Cir. 1994) ("When there is evidentiary support for a defendant's theory of self-defense, failure to instruct on self-defense violates a criminal defendant's Fifth and Sixth Amendment rights." (citation omitted)). But see Crump v. Caspari, 116 F.3d 326, 327 (8th Cir. 1997) ("[E]ven if the failure to give [a] self-defense instruction were a violation of state law, habeas relief could only be granted if the failure to instruct the jury on self-defense amounted to 'a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure.'" (citations omitted)); United States ex rel. Means v. Solem, 646 F.2d 322, 332 (8th Cir. 1980) ("Our finding that there was evidence to support instructions on self-defense and defense of others, and that a proper request for such instructions was made, is insufficient, by itself, to grant habeas corpus relief. We must also find that the error in refusing to instruct the jury in this case was of a constitutional magnitude.").

For the reasons discussed above, however, we are satisfied that Lannert was not entitled to a self-defense instruction under Missouri law. See, e.g., State v. Nunn, 697 S.W.2d 244, 246 (Mo. Ct. App. 1985) (rejecting defendant's self-defense claim where "it [was] clear that defendant was the initial aggressor in the altercation"); see also Crump, 116 F.3d at 328 ("A self-defense instruction was not required [on] these facts [under Missouri law], and the failure to give it did not violate any constitutional right." (citation omitted)). To the extent that Lannert challenges Missouri's formulation or interpretation of its self-defense rule, we are not persuaded. See Anderson, 44 F.3d at 681; Woods, 891 F.2d at 199 ("[T]o the extent that [the defendant] is arguing that South Dakota should have adopted a different self-defense doctrine, he misses the essential target."); see also Medina v. California, 505 U.S. 437, 445-46 (1992) (recognizing that "because the States have considerable expertise

in matters of criminal procedure and the criminal process[,] . . . it is appropriate to exercise substantial deference to legislative judgments in this area"); Taylor, 288 F.3d at 853 (noting that "states have great latitude in criminal proceedings, including latitude to formulate both the elements of crimes and the defenses to them" (citing Egelhoff, 518 U.S. at 43 (plurality))). Accordingly, we conclude that Lannert's failure-to-instruct claim does not entitle her to habeas relief.

The judgment is affirmed.

HEANEY, Circuit Judge, concurring.

I concur in the majority's opinion because I agree that we are bound by Missouri's interpretation of its battered spouse syndrome statute. It appears to me, however, that the statute does not require the narrow construction given to it by the Missouri Court of Appeals.

The state court concluded Lannert was the initial aggressor in the tragic series of events that terminated with her father's death. The Missouri courts have determined that in such a circumstance, a defendant is not entitled to a self-defense instruction, and consequently is not permitted to present evidence of battered women's syndrome to buttress her claim of self-defense. In light of the years of sexual abuse that Lannert and her sister endured in their father's home, I believe it is reasonable to conclude that Lannert's father was the true initial aggressor. At the very least, one could conclude that Lannert's altered state of mind led her to believe that her father, a relentless attacker, would hurt her or her sister again, perhaps on the night of his death.

The majority appropriately notes that if Missouri's battered spouse syndrome statute is to have any meaning at all, it must serve as a modification of the mental state required of the battered woman. State v. Williams, 787 S.W.2d 308 (Mo. Ct.

-13-

App. 1990). Significantly, the Williams court also stated that "the syndrome creates a perception in the battered woman so that as to her the required elements [of self defense] have been met." Id. at 312. In State v. Edwards, 60 S.W.3d 602, 615 (Mo. Ct. App. 2001), the Missouri Court of Appeals explained that "if the jury believes the defendant was suffering from battered spouse syndrome, it must weigh the evidence in light of how an otherwise reasonable person who is suffering from battered spouse syndrome would have perceived and reacted in view of the prolonged history of physical abuse." Given this line of reasoning, it would seem logical for the courts to allow a defendant to present evidence of battered women's syndrome, even if it appears at first glance that the defendant was the initial aggressor.

The Missouri courts have determined, however, that the syndrome itself cannot serve as a defense to murder; rather, it is evidence to show the battered woman's state of mind at the time of the offense in order to assist the jury in evaluating a claim of self-defense. State v. Pisciotta, 968 S.W.2d 185 (Mo. Ct. App. 1998). In other words, a battered woman must present a viable self-defense theory before she is permitted to reveal how years of abuse led her to act in a socially unacceptable, but perhaps morally justifiable, manner. This interpretation unjustly inhibits the intended effect of the battered spouse syndrome statute because it demands that a battered woman's actions conform to the old doctrine of self-defense.

The "absence of aggression or provocation on the part of the defender" element of the Missouri self-defense statute does not articulate a time frame during which the initial act of aggression and the act of self-defense must occur. It is therefore deeply troubling that the jury was not completely informed of the scope of the abuse Lannert suffered, her fear, or her rage that her sister may also have been victimized by their father. This evidence of battered spouse syndrome might have placed Lannert's actions in proper context, and may have allowed a jury to conclude that Lannert was not the initial aggressor on the night of her father's death, potentially resulting in a very different outcome than what she faces today.

Because the Missouri courts have the authority to interpret the state's battered spouse syndrome statute, however, I reluctantly concur.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.