# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2574

_____

Jason Aaron Ivy,

        Appellee,

v.

Paul Caspari,

        Appellant.

    \*
    \*
    \*
    \*  Appeal from the United States
    \*  District Court for the
    \*  Western District of Missouri.
    \*
    \*
    \*

_____

Submitted:  September 21, 1998

Filed:  April 19, 1999
_____

Before RICHARD S. ARNOLD, WOLLMAN, and BEAM, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

The State of Missouri appeals the district court's[1] order granting Jason Aaron Ivy's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  We affirm.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

# I.

We summarize the facts as found by the district court. On April 14, 1988, Ivy, then age fifteen, shot and killed his stepsister, Susan Magruder, with a .22 caliber handgun. Earlier that night, Susan had played a practical joke on Ivy while he was sleeping. She woke him and told him that someone was breaking into his father's truck. Ivy leaped from his bed and peered through the window to observe the nonexistent burglar. He returned to the room only to find Susan laughing at his gullibility.

Ivy decided to play a return practical joke of his own on Susan, who was studying in her room. Ivy retrieved a .22 caliber revolver from his father's bedroom, believing that the gun was safe because his father had told him that the gun was unloaded and that he could not afford to buy bullets for it. Ivy entered Susan's room, cocked the gun, and pointed it at her. Susan uttered an obscenity and returned to her homework. Ivy pulled the trigger and the gun discharged, the bullet striking Susan in the head.

Ivy called 911 immediately after the shooting. Distraught and panicky, he informed the operator that he had just shot his sister and requested immediate assistance. Susan was rushed to the hospital, where she died shortly thereafter.

Ivy was arrested and taken into custody by the Columbia, Missouri, police department, where he was questioned throughout the night, unrepresented by counsel. He eventually signed a written statement explaining that he had accidentally shot and killed Susan as part of a practical joke. Ivy was transferred to the Boone County Juvenile Center, where he stayed through September 1988.

While at the juvenile facility, Ivy was examined by Dr. Syed Arshad Husain pursuant to a court order. Diagnosing Ivy as suffering from a dysthymic disorder

(depression) and concluding that he was a serious suicide risk, Dr. Husain recommended that Ivy be hospitalized in a psychiatric facility and that he should not be tried as an adult. In June of 1988, Ivy was transferred from the juvenile facility to the Fulton State Hospital and held in a psychiatric ward. While there, Ivy was depressed and engaged in acts of self-mutilation.

On September 23, 1988, the juvenile court held an adult certification hearing after denying Ivy's appointed counsel's request for a continuance for additional time to prepare (counsel, a member of the public defender's staff, had 43 felony cases pending at the time). The juvenile court certified Ivy to be tried as an adult and issued an order dismissing juvenile court jurisdiction. Thereafter, the State filed a felony information charging Ivy with first degree murder and armed criminal action. See Mo. Rev. Stat. §§ 565.020 and 571.015 (1986).

Ivy was interviewed by Dr. A.E. Daniel, a psychiatrist, over a six-hour period in January and early February 1989 at the request of Ivy's counsel pursuant to Mo. Rev. Stat. § 552. Dr. Daniel concluded that although Ivy was competent to stand trial, he did have a qualifying mental disease, as defined by Mo. Rev. Stat. § 552. Specifically, Dr. Daniel found that "[Ivy] was unable to appreciate the nature, quality, and wrongfulness of the alleged conduct and was incapable of conforming his conduct to the requirements of the law." Appellant's App. at 359. As will be seen, Ivy was unaware of Dr. Daniel's report at the time of his plea hearing.

Ivy's attorney negotiated a plea agreement in April 1989. Under the agreement, the State agreed to reduce the charges to second degree felony murder and armed criminal action. On April 10, 1989, Ivy pleaded guilty to the amended information. That same day, the court imposed a life sentence on the second degree murder conviction and fifteen years' imprisonment on the armed criminal action charge. Ivy was delivered to the Department of Corrections and taken to the Missouri Eastern Correctional Center, where he has remained to this day.

On July 13, 1989, the Boone County Circuit Court received from Ivy a motion for postconviction relief dated July 10, 1989.  Because the last day for filing such a motion was July 10, 1989, the State moved to dismiss the motion as untimely filed.  The circuit court granted the motion and dismissed the action.  Ivy appealed the dismissal and attempted to raise his substantive postconviction claims in the Missouri Court of Appeals.  That court affirmed the circuit court's ruling on April 24, 1990.  Ivy then appealed to the Missouri Supreme Court, requesting rehearing and/or a transfer.  That appeal was summarily denied on July 31, 1990.

Having exhausted Missouri's appellate procedure, Ivy filed a 28 U.S.C. § 2254 petition with the district court on October 26, 1990.  For reasons that are not relevant to the merits of this action, an evidentiary hearing was not held on the petition until March 15, 1996.  Before a ruling could be made, the district judge to whom the case was originally assigned retired, and the case was ultimately transferred to Judge Laughrey.  Following a second evidentiary hearing, the district court found that Ivy had sufficiently established the cause and prejudice required to overcome his procedural default.  Finding that Ivy's plea was not knowingly and voluntarily entered and that Ivy's trial counsel had rendered constitutionally ineffective assistance, the district court issued an order granting a writ of habeas corpus, conditioned upon the State's allowing Ivy to withdraw his guilty plea and affording Ivy a trial within sixty days of the order.  The district court stayed the order pending disposition of the appeal.

**II.**

The principal question before the district court was whether, in addition to his July 10, 1989, motion, Ivy had prepared and mailed a similar motion for postconviction relief on July 5, 1989.

Ivy testified at the December 1, 1997, hearing that on July 5, 1989, he typed a motion for postconviction relief, signed it before a notary public, placed the motion and two copies in an envelope addressed to the Boone County Circuit Court, affixed three stamps on the envelope, and deposited the envelope in the prison mail system that same day. Janet Vogel, who was then working as a corrections case worker at the time, testified that she notarized a legal document for Ivy on July 5, 1989, as evidenced by her notary log and by her signature that appears on a copy of the motion that was introduced as an exhibit at the hearing. It is undisputed that the July 5 motion was never received by the Boone County Circuit Court.

Ivy also testified that he had mailed the July 10, 1989, postconviction motion because another inmate had informed him (erroneously, it turned out) that he needed to file three original motions with the court rather than one original and two copies.

The district court credited Ivy's testimony and found that Ivy had indeed attempted to mail his properly executed July 5, 1989, motion on that day, a finding that we conclude is not only not clearly erroneous, but which is almost compelled by the record.

## III.

The parties agree that the untimely filing of Ivy's July 10, 1989, motion for postconviction relief constitutes a procedural bar under Missouri law. This bar is based on the filing requirements of Mo. R. Crim. Proc. 24.035(b), and is not linked to or dependent on federal law. See Easter v. Endell, 37 F.3d 1343, 1345 (8th Cir. 1994).

Federal review of a habeas corpus petition is barred when a state court dismisses or rejects a prisoner's claims on independent and adequate state grounds unless the petitioner establishes cause for the default and actual prejudice resulting

from the alleged violations of federal law. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Wainwright v. Sykes, 433 U.S. 72, 81-83 (1977). The cause and prejudice standard applies to procedural defaults on appeal as well as at trial. Murray v. Carrier, 477 U.S. 478, 491 (1986). Under this standard, cause is established when "some objective factor external to the defense impede[s] counsel's efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488. The Court has not assayed "an exhaustive catalog of such objective impediments," see id., and the precise contours of the cause requirement have not been clearly defined. See Amadeo v. Zant, 486 U.S. 214, 221 (1988). See also Jamison v. Lockhart, 975 F.2d 1377, 1379-80 (8th Cir. 1992). At a minimum, however, Ivy must show that "something *external* to [him], something that cannot fairly be attributed to him," caused the procedural default. See Coleman, 501 U.S. at 753 (citing Murray v. Carrier, 477 U.S. at 488).

The State would have us hold that a petitioner is required to impute cause to the State, as in the Sixth Amendment context, as a prerequisite to relief from a procedural default. See Coleman, 501 U.S. at 753. We decline to do so, for we do not read the Supreme Court's cases as requiring such a showing. True, the Court has said that "[f]or cause to exist, the external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." See McClesky v. Zant, 499 U.S. 467, 497 (1991) (citing Murray v. Carrier, 477 U.S. at 488). We do not interpret "government interference," however, to foreclose a finding that governmental nonaction can be the functional equivalent of government interference.

The district court found that timely receipt of the July 5 motion would have occurred absent external interference, a finding that is bolstered by the fact that Ivy's second motion arrived three days after mailing. The nondelivery of Ivy's first motion may not have been the State's "fault," in the sense that there is no evidence that a prison employee deliberately or maliciously purloined the envelope containing the

-6-

motion, but we do not believe that a prisoner need make such a showing to establish cause. It is the fact of nondelivery of a prisoner's timely and properly mailed motion, not the reason for that nondelivery, that constitutes cause for the procedural default. Thus, it is enough for Ivy to establish, as he has, that the nondelivery of the first petition was not the result of any want of attention on his part to the requirements of the State's filing deadlines.

Alternatively, if it is required that cause be attributable to the State, we conclude that Ivy has made such a showing, for it was incumbent upon the State to ensure that Ivy's motion was promptly put into the regular stream of outgoing mail. Had the State done so in this case, the possibility that the motion would not have been delivered seems so highly unlikely as not to be worthy of serious consideration.[2]

## IV.

We turn then to the question whether Ivy suffered actual prejudice. See Murray, 477 U.S. at 494. To establish actual prejudice, Ivy must show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (italics added). See also Jennings v. Purkett, 7 F.3d 779, 782 (8th Cir. 1993). Ivy must prove that "but for the constitutional violations--that he was denied effective counsel and did not understand the elements of the crime he pleaded guilty to--he might not have been convicted of the same crimes." Easter, 37 F.3d at 1347 (citing Dawan v. Lockhart, 980 F.2d 470, 474 (8th Cir. 1992)).

---

[2]Although the State argues to the contrary, we agree with the district court that Ivy's July 5 motion fairly presented to the state court the issues he raised in his section 2254 petition.

Because it waives numerous constitutional rights, a guilty plea must be knowing, intelligent, and voluntary. See Boykin v. Alabama, 395 U.S. 238, 242 (1969); United States v. Brown, 148 F.3d 1003, 1012 (8th Cir. 1998). A guilty plea must represent a voluntary and intelligent choice among the various options available to the defendant. See North Carolina v. Alford, 400 U.S. 25, 31 (1970); Easter v. Norris, 100 F.3d 523, 525 (8th Cir. 1996), cert. denied, 117 S. Ct. 1322 (1997).

A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. See Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976). A plea is involuntary if the defendant did not receive "real notice of the true nature of the charge against him." Smith v. O'Grady, 312 U.S. 329, 334 (1941).

The information to which Ivy pleaded guilty charged felony murder in the second degree as a result of the perpetration of the felony of unlawful use of a weapon. Under Missouri law, the State was not required to prove that Ivy intended to kill his stepsister, but it was required to prove that he intended to commit the underlying felony. See State v. Clark, 652 S.W.2d 123, 127 (Mo. banc 1983); see also State v. Rumble, 680 S.W.2d 939, 943 (Mo. 1984) (defendant must have had the "requisite intent to commit or participate in the underlying felony").

The following colloquy occurred during the plea hearing:

Court:  Do you understand that what you are pleading guilty to is a charge which alleges that on the fourteenth day of April of last year, here in Boone County, that Susan Magruder was killed by shooting her and that as a result of the perpetration of the Class D felony of unlawful use of a weapon that you committed this crime under what we call second degree murder?

-8-

Ivy:      Yes sir.

Court:    Do you understand the fact that she was shot while you were using a weapon, a particular weapon, is what makes this what we call felony murder, second degree? It doesn't matter what your intent was?

Ivy:      Yes sir.

Court:    Mr. Murray. Do you agree with that? That is your understanding of felony murder in this situation.

Murray:   Yes sir. That is a correct statement.

Court:    And do you understand that it doesn't make any difference whether you deliberated or whether there was premeditation involved. When you plead guilty under this particular fact situation the intent is derived from the fact that another felony was being committed. Do you understand that?

Ivy:      Yes sir.

Court:    Now do you understand under this particular factual situation, it doesn't make any difference whether you intended to shoot her or not, that the fact that you are charged with felony murder and I want to be sure you understand this because I don't want you, Mr. Ivy, to come back some day and say "wait a minute judge, I didn't intend to kill anybody, it was an accident" do you understand that doesn't have anything to do with the way this is charged, do you understand that?

Ivy:      Yes sir.

Court:    And do you understand that you can't come back in and say "I want to set up self defense or I want to set up that it was an

accident or we were struggling for the pistol or I didn't know it was loaded." Do you understand that all of those matters go out the window under this particular charge?

Ivy: Yes sir.

Court: Mr. Murray do you believe from your conversation with your client that he understands the concept of felony murder in the second degree?

Murray: Yes sir, I do. We discussed this a number of times both in person and on the phone. I have no problems with his understanding at all.

Court: And do you believe that he understands that the question of his intent is in no way involved in this case as a result of the way the state charged it?

Murray: That is correct, your honor. We have discussed that specific point.

Appellant's Add. at 7-8.

The underlying felony in this case, unlawful use of a weapon, makes it unlawful to "knowingly . . . exhibit . . . any weapon readily capable of lethal use in an angry or threatening manner." Mo. Rev. Stat. § 571.030.1(4). Although the trial court correctly stated that the law did not require the State to prove that Ivy intended to kill his stepsister, it did not advise Ivy that the State was required to prove that Ivy intended to commit the underlying felony. This is more than a quibble, for although it might be argued that such an intent is manifested by the fact of pointing a handgun at another, intent is not to be presumed, and had the case gone to trial the State would have been put to its proof on this element of the offense. We conclude, therefore, that

-10-

because Ivy was not advised that intent was an element of the underlying offense, his plea perforce could not have been voluntarily entered.

In addition to the failure of the trial court and counsel to explain fully the elements of the offense to which Ivy pleaded guilty, other circumstances cast doubt on the voluntariness of Ivy's plea. At the time he entered his plea, Ivy was a sixteen-year-old youth who had had no experience with the criminal justice system. Although there was in existence a medical report indicating that Ivy was suffering from a mental illness that might well have constituted a valid defense to the charges against him, the following exchange occurred during the plea hearing:

> Court: And you are aware of the fact that the doctors have indicated by their reports that you are not suffering from a mental illness such as to prevent or preclude you from being responsible for your conduct, do you understand that?
>
> Ivy: Yes sir.
>
> Court: You understand that the doctors are basically saying that whatever problems you might have they are not problems that in any way as far as the Missouri statute of mental responsibility indicate that you are not guilty by reason of mental disease? Do you understand that?
>
> Ivy: Yes sir.
>
> Court: And Mr. Murray. You are likewise aware of that, are you not Mr. Murray?
>
> Murray: Yes sir.

This exchange occurred notwithstanding counsel's knowledge that Dr. Daniel had concluded that Ivy "does have a mental disease or defect according to the

provisions of Chapter 522 . . . and that [a]s a result of the mental disease, he was unable to appreciate the nature, quality, and wrongfulness of the conduct and was incapable of conforming his conduct to the requirements of the law." Counsel neither discussed Dr. Daniel's report with Ivy nor brought it to the attention of the trial court. Counsel's failure to advise Ivy of the possible defense of mental illness and his failure to bring the report to the trial court's attention are additional indicia of his ineffective assistance and provide additional grounds for the district court's finding that Ivy's plea was not knowingly and voluntarily entered.

In addition to the foregoing deficiencies in trial counsel's performance and Ivy's consequent lack of knowledge concerning the charges against him and the defenses available to him, the district court found that counsel erroneously believed that Ivy might face the death penalty and that he had so advised Ivy.[3] Ivy, however, was not eligible for the death penalty under Missouri law. See Mo. Rev. Stat. § 565.020.2. Laboring under the misinformation about the possibility of receiving the death penalty, Ivy could not have made a voluntary and intelligent choice between alternative courses of action. See Hale v. Lockhart, 903 F.2d 545, 550-51 (8th Cir. 1990) ("[t]he threat of the death penalty is a powerful incentive to plead regardless of whether the risk of receiving it is perceived to be great or small.").

## V.

We conclude that the district court did not err in finding that the ineffective assistance of trial counsel, coupled with the inadequate advice by the trial court, resulted in a guilty plea that was not knowingly and voluntarily entered and that Ivy was thus entitled to habeas relief.

---

[3]It is of more than passing significance that the State did not call trial counsel to testify at the evidentiary hearing conducted by Judge Laughrey.

-12-

We express our appreciation to appointed counsel for their zealous efforts on Ivy's behalf, both in the district court and on appeal.

The order is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.