**NOT RECOMMENDED FOR PUBLICATION**
File Name: 14a0616n.06

**No. 12-4411**

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 08, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DAVID FOSTER, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| WARDEN, CHILLICOTHE CORRECTIONAL | ) | DISTRICT OF OHIO |
| INSTITUTION, | ) | |
| | ) | OPINION |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE:     GRIFFIN, WHITE, and STRANCH, Circuit Judges.

STRANCH, Circuit Judge.  David Foster appeals the district court's dismissal of his petition for a writ of habeas corpus as procedurally defaulted in Ohio state court.  He contends that the district court erred by not excusing the untimely filing of his state post-conviction petition so that his ineffective-assistance-of-counsel claim could be considered on the merits. We agree, concluding that there was cause and prejudice to excuse the procedural default. Nevertheless, we AFFIRM the district court because Foster fails to establish ineffective assistance of counsel.

**I. BACKGROUND**

In 2005, Foster was tried by a jury in Ohio state court for trafficking and possession of heroin.  The facts of that case as found by the Ohio Court of Appeals show that Foster was involved in a drug transaction that took place under the surveillance of a regional narcotics unit.

He drove another man, Billy Harris, to pick up heroin at a hotel and then accompanied Harris into the hotel. The man who transported the drugs asked Harris when he would receive payment for the drugs, and Harris told him it would be as soon as that night. Foster confirmed Harris's answer, saying "yeah." Harris then received a paper bag of heroin, which he passed to Foster. Foster looked into the bag and then left the room, at which time he was immediately arrested. Foster subsequently gave a mirandized statement that he did not have an agreement with Harris that he would receive or distribute any of the drugs, but because he had sold cocaine for Harris in the past, he anticipated Harris would give him some of the heroin to sell. Foster also signed forms consenting to the search of his house and an apartment that he rented for his son, David Howard, from Robert Parrish, Foster's uncle. In the search of the apartment, police recovered material commonly used for packaging drugs, a digital scale, and a satellite television bill and business cards in Foster's name. Foster was convicted of trafficking heroin with a major-drug-offender specification, possession of heroin with a major-drug-offender specification, and conspiracy.

The deadline for Foster to file his post-conviction petition was November 28, 2005.[1] On November 22, 2005, he delivered his post-conviction petition and two related motions to prison officials for mailing. In his petition, he alleged ineffective assistance of counsel. On November 23, 2005, he received a cash-withdrawal receipt that indicated postage had been paid. The petition was not filed with the court until December 7, 2005, well after the deadline.

The Hamilton County Court of Common Pleas dismissed Foster's post-conviction petition as untimely and denied his motion for reconsideration. The Ohio Court of Appeals

---

[1]Ohio has a 180-day deadline for requesting post-conviction relief. Ohio Rev. Code § 2953.21(A)(2). The 180th day was November 27, 2005, but because that date was a Sunday, the deadline for filing was the subsequent Monday, November 28, 2005.

affirmed the dismissal of the petition as untimely. Foster did not appeal to the Ohio Supreme Court.

After numerous direct appeals, Foster filed a petition for a writ of habeas corpus in federal district court raising four issues, including that his trial counsel was ineffective for not calling two crucial witnesses. The district court denied his petition and his request for a Certificate of Appealability (COA) on all claims. The district court dismissed the ineffective-assistance-of-counsel claim on the grounds that Foster's state post-conviction petition raising this claim was untimely and that he had not demonstrated cause for this procedural default as required for a federal court to excuse a late filing in state court. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Foster then requested a COA from this court on all four issues. We granted the COA on one subground of his ineffective-assistance-of-counsel claim, concluding that "[r]easonable jurists could disagree with the district court's conclusion that Foster did not establish cause" for his late filing and that Foster facially alleged a violation of his constitutional right insofar as his counsel failed to call Robert Parish as a witness. We denied the COA on all other claims.

## II. ANALYSIS

### A. Standard of Review

This court reviews de novo a district court's conclusions on questions of law and mixed questions of law and fact, and reviews its factual findings for clear error. *Moore v. Mitchell*, 708 F.3d 760, 774 (6th Cir. 2013). In cases of procedural default in state court, this court reviews de novo the district court's application of the "cause and prejudice" factor of the procedural default test. *Tolliver v. Sheets*, 594 F.3d 900, 928 (6th Cir. 2010). An ineffective-

assistance-of-counsel claim in a habeas petition is a mixed question of law and fact. *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012).

## B. Exhaustion

As an initial matter, the government argues that this court lacks jurisdiction because Foster did not appeal to the Supreme Court of Ohio the Ohio Court of Appeals' dismissal of his claims for procedural default. The exhaustion doctrine provides that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before federal courts may review the issues. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). However, exhaustion "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125–26 n. 28 (1982); *Wagner v. Smith*, 581 F.3d 410, 415 (6th Cir. 2009). "A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer available to him." *Coleman*, 501 U.S. at 732 (internal quotation marks omitted). Because Foster's petition was filed late, no state remedies are available to him and he has exhausted his claims.

## C. Procedural Default

A state prisoner seeking a writ of habeas corpus must request relief from the conviction in state court, and failure to raise any constitutional claims as mandated by state procedural rules may result in a procedural default that permanently bars federal habeas review. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Federal courts will dismiss a habeas claim as procedurally defaulted in state court if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule against the petitioner; (3) the rule constitutes an adequate and independent state ground for denying review

of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default, or that enforcing the procedural default will result in a miscarriage of justice. *Hanna v. Ishee*, 694 F.3d 596, 607 (6th Cir. 2012); *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc).

The first three factors are satisfied in this case; thus, Foster may avoid dismissal for procedural default only if he demonstrates that there was cause for his noncompliance with the procedural rule and he was prejudiced by the default, or that enforcing the procedural default in this case will result in a miscarriage of justice. *Henderson v. Palmer*, 730 F.3d 554, 559 (6th Cir. 2013). "Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence *or argument* as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). (emphasis added). The Supreme Court has instructed that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007) (To establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him.").

Foster contends that his delivery of his petition to prison officials for mailing five or six days before it was due constitutes cause for his procedural default. Had this situation involved a federal habeas petition, it would have been timely because of the "prison mailbox rule," which provides that submissions by pro se petitioners are considered filed at the moment of delivery to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 271–72 (1988). However, Ohio does not follow the federal "prison mailbox rule"; it has a strict filing deadline that generally

prevents its state courts from hearing an untimely petition. However, this state rule does not prevent federal courts from excusing that procedural default upon a finding of cause and prejudice, allowing federal courts to consider the defaulted claims. *See Henderson*, 730 F.3d at 560; *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003).

Our recent decision in *Henderson* considered very similar facts to those in this case: the petitioner, a prisoner in Michigan, without pointing to any specific inaction by prison officials, simply alleged that he gave his filing to prison officials five days before the filing deadline, and it arrived one day late. 730 F.3d at 560. We concluded that he demonstrated cause for the default, holding that "when a prisoner submits a petition to the prison mailroom five days prior to a filing deadline and it is not delivered there is cause to excuse the procedural default." *Id.* (internal quotation marks omitted); *see also Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999) (holding that a prisoner need not demonstrate that the nondelivery of a motion was the State's fault because "[i]t is the fact of nondelivery of a prisoner's timely and properly mailed motion, not the reason for that nondelivery, that constitutes cause for the procedural default").

As *Henderson* demonstrates, government inaction such as delay in mailing a prisoner's court filing is one objective factor that may constitute cause for a prisoner's failure to comply with a state's procedural rule. 730 F.3d at 560; *see also Maples*, 340 F.3d at 439. *Henderson* also makes clear that a prisoner is not required to point to specific government conduct demonstrating inaction or interference to demonstrate cause. 730 F.3d at 560. Once a prisoner gives his state court filing to prison officials to be mailed, it is in their control and he no longer has the ability to affect its delivery. *Id.* If the filing would have been timely filed "'in the normal course of events'" but is filed late or never reaches the court, the prisoner has demonstrated cause to excuse the procedural default. *Id.* (quoting *Maples*, 340 F.3d at 439); *see*

*also Ivy*, 173 F.3d at 1141 ("[I]t [is] incumbent upon the State to ensure that [the prisoner's] motion was promptly put into the regular stream of outgoing mail.").

Foster delivered his filing to prison officials at least five days before it was due. Even allowing for a prison's mail procedures, five days certainly provided "sufficient time for it to arrive timely in the normal course of events."[2] *Maples*, 340 F.3d at 439. This constitutes cause for Foster's procedural default.[3]

In addition to cause, Foster must demonstrate prejudice before a federal court may review his procedurally defaulted claim. *Lundgren*, 440 F.3d at 763–64. *Maples* provides the proper framework for this inquiry because it addresses prejudice in the same context as here—where the state's inaction prevented a timely filing. 340 F.3d at 439. In *Maples*, the court held that the petitioner suffered prejudice when "the Michigan Supreme Court refused to consider Maples's claim of ineffective assistance of counsel." *Id.* The *Henderson* court followed *Maples* and effectively assumed prejudice, holding that the untimely filing did not render the petitioner's claims procedurally defaulted. *Henderson*, 730 F.3d at 560. District courts also have followed *Maples*, finding prejudice where state inaction caused an untimely filing. *See, e.g.*, *Bradley v. Turner*, No. 3:12-CV-1504, 2013 WL 1345667, *18 (N.D. Ohio Feb 11, 2013); *Brown v.*

---

[2]We note that there does appear to be a consistent delay in Foster's mailings reaching the court. Though determining which certificate of mailing is associated with which court date stamp is difficult, it appears that the *shortest* time between submission to the prison and filing at the court was six days—December 7, 2005 to December 13, 2005. Even assuming that prison procedure (requiring a check of prisoner's mail before sending it) delays the mailing by one day, this would not explain the consistently large gap between submission to prison officials and filing.

[3]To the extent that the state argues that Foster did not submit his post-conviction petition to prison officials for mailing on November 22 or 23, 2005, this argument is unavailing. In addition to the state's failure to raise this argument below, the evidence demonstrates that Foster did submit the petition to be mailed at that time. Thus, whether the petition arrived late or never arrived at all is irrelevant because under either scenario state inaction or interference constitutes cause for his procedural default.

*Warden, Lebanon Correctional Inst*., No. 3:08CV004772011, WL 5357831, *6–7 (S.D. Ohio Aug 30, 2011); *Hines v. Brunsman*, No. 3:08 CV 2916, 2010 WL 750176, *19–20 (N.D. Ohio Feb 26, 2010); *Jenkins v. Timmerman-Cooper*, No. 3:04CV324, 2007 WL 2571945, at *5 (S.D. Ohio 2007). Here, as in *Maples*, Foster was prejudiced by the state court's refusal to hear his ineffective-assistance-of-counsel claim. *See Maples*, 340 F.3d at 439.

Foster's claim is not procedurally defaulted because there is cause and prejudice to excuse the untimely filing. We proceed to the merits of Foster's ineffective-assistance-of-counsel claim because the parties have briefed the issue, it was addressed at oral argument, and doing so serves the interests of judicial economy. *See Lindsay v. Yates*, 498 F.3d 434, 441 (6th Cir. 2007).

### D. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's conduct was deficient and (2) the deficient conduct prejudiced the defense by depriving the petitioner of a fair trial. *Strickland v. Washington* 466 U.S. 668, 687 (1984). Counsel's performance is deficient where the conduct was "so serious that counsel was not functioning as the 'counsel' guaranteed the petitioner by the Sixth Amendment." *Id*. Under the *Strickland* standard, there is a strong presumption that counsel's conduct was reasonable, thus this court's review of counsel's performance is highly deferential, especially with regard to trial strategy. *Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004). To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Foster argues that his counsel was ineffective for failing to call Robert Parrish, his uncle, as a witness. Foster contends that Parrish's testimony would have affected the outcome of the

case because it would have supported his argument that the drug dealing equipment found in the apartment rented by Foster was not his. Foster consented to the search of the apartment, which he claims he rented for his son, David Howard. In addition to the drug dealing equipment, the police also found a satellite television bill and business cards in Foster's name. Foster's motion to suppress the drug equipment evidence was denied.

As evidence of the testimony Parrish would have given, Foster offers an unsworn document in which Parrish provides information about his relationship with Foster and Howard and about the apartment Foster allegedly rented for Howard. Parrish writes that, before Foster was arrested, he had agreed to help Foster remove the contents of the apartment and that the utilities for the apartment had been cut off because Howard was incarcerated. Foster testified to much of this same information.

Even assuming deficient counsel performance, Foster has not shown any prejudice. Parrish's testimony, if offered during the suppression hearing, would not have resulted in suppression of the drug-equipment evidence. Moreover, even if the evidence from the apartment had been suppressed and Parrish had testified at trial as well, Foster has failed to show a reasonable probability that the outcome of the case would have changed. The case against Foster was strong and Parrish's testimony did not address the essential evidence—the drug transfer and Foster's statement to the police. Foster was recorded at the meeting where the transfer of heroin took place, affirmed Harris's statement made during that meeting that the money for the heroin would be transferred as soon as that evening, and was arrested with the bag of heroin in his hand as he left the room. Foster also gave a mirandized statement that he had previously sold cocaine he received from Harris and anticipated that Harris would give him some of that heroin to sell.

Foster has not shown that, but for counsel's alleged errors, there was a reasonable possibility that the result of the trial would have been different. *See Lundgren*, 440 F.3d at 775 (petitioner failed to show a reasonable probability that, but for counsel's alleged errors, the result would have been different where there was overwhelming evidence of guilt).

### III. CONCLUSION

Foster established cause and prejudice for his untimely petition in state court. On the merits of his claim, however, Foster failed to show prejudice from his counsel's performance. Accordingly, we **AFFIRM** on the merits the district court's dismissal of Foster's ineffective-assistance-of-counsel claim.