**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1206n.06

**Nos. 10-2477; 10-2532**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Nov 21, 2012*
DEBORAH S. HUNT, Clerk

NANCY SEAMAN,

      Petitioner-Appellee / Cross-Appellant,

v.

HEIDI WASHINGTON,

      Respondent-Appellant / Cross-Appellee.

                                  /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    CLAY and SUTTON, Circuit Judges; RICE, District Judge.[*]

**CLAY, Circuit Judge.** Following a jury trial in Michigan's Oakland County Circuit Court, Petitioner Nancy Seaman was convicted of the first-degree premeditated murder of her husband and sentenced to life imprisonment. In this case involving a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, the parties cross-appeal a decision by the district court that conditionally granted Petitioner the writ. The district court concluded that Petitioner was entitled to relief because she suffered ineffective assistance of counsel when her defense attorney failed to fully develop her claim of battered spouse syndrome ("BSS"). Respondent appeals the conditional grant of relief, and Petitioner cross-appeals the district court's denial of relief on her ineffective assistance of counsel claim related to an allegedly deficient jury instruction. For the reasons that

---

[*]The Honorable Walter Herbert Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

follow, we **REVERSE** the district court's judgment granting a writ of habeas corpus, **VACATE** the writ, and **REMAND** with instructions that the case be dismissed.

## BACKGROUND

This case is a tale of two opposing narratives: one of a battered woman killing her abusive husband in self-defense, and another of premeditated murder. Petitioner's husband, Robert Seaman, was discovered by police officers responding to a missing person report on May 12, 2004. Mr. Seaman's body was hidden in the trunk of Petitioner's car, which was parked in the driveway of the couple's home in Farmington Hills, Michigan. Mr. Seaman had been struck on the head and neck with a hatchet at least sixteen times, slashed with a knife on the neck, stabbed at least twenty-one times, and struck on the forehead with an unidentified blunt object.

Petitioner admitted at trial that she killed her husband, but alleged that she did so only in self-defense. Petitioner testified that her marriage was punctuated by decades of emotional and physical abuse. She stated that she recently had purchased a condominium and was planning to leave the marriage when Mr. Seaman discovered her plans. She claimed that her husband became violent during a dispute about the condominium, and that he picked up a long knife from their kitchen, and threatened to kill her. Petitioner fled to the garage, where she grabbed a hatchet and swung blindly at Mr. Seaman. She testified that she was terrified, that she had no idea how many times she hit her husband, and that she continued to hit him because she was afraid he would kill her for fighting back.

The prosecution argued, however, that the murder was planned. Central to this theory was evidence showing that Petitioner purchased the hatchet the evening before the murder and that she

shoplifted and then returned a similar hatchet in an attempt to cover her original purchase. Additionally, Petitioner thoroughly cleaned the crime scene with bleach and repainted portions of the garage to cover the blood. Petitioner then wrapped Mr. Seaman's body and hid it in the trunk of her car, where it remained for several days. When friends, family, and eventually the police began to ask questions about her husband's whereabouts, Petitioner fabricated stories to cover up his disappearance.

The couple's two sons, Greg and Jeff Seaman, also testified. They provided generally consistent accounts of their parents' marriage, except for one critical issue: Jeff testified that he never saw his father abuse his mother, whereas Greg testified that his father frequently abused his mother, both verbally, and occasionally, physically.

The jury convicted Petitioner of first-degree premeditated murder, in violation of Michigan Compiled Laws § 750.316. On January 25, 2005, she was sentenced to life imprisonment. Petitioner filed a motion for a directed verdict of acquittal/new trial. On August 31, 2005, the trial court denied her motion, but reduced her conviction to second-degree murder, finding that the first-degree murder conviction was not supported by sufficient evidence of premeditation or deliberation.

The state filed an application for leave to appeal the reduction before the Michigan Court of Appeals, and Petitioner filed an appeal of right. The two appeals were consolidated, and on February 13, 2007, the Michigan Court of Appeals reversed the trial court's reduction and denied all of Petitioner's claims on appeal, with one judge dissenting. *People v. Seaman*, Nos. 260816, 265572, 2007 WL 466003 (Mich. Ct. App. Feb. 13, 2007) ("*Seaman I*"). Petitioner then filed an application

for leave to appeal before the Michigan Supreme Court, which was denied. *People v. Seaman*, 738 N.W.2d 736 (Mich. 2007).

In 2008, Petitioner filed for post-conviction relief before the state trial court. While her motion for relief from judgment was pending, she also filed for a federal writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Although the federal case was initially held in abeyance to allow Petitioner to complete her state proceedings, Petitioner requested that the stay be lifted, and she abandoned her unexhausted claims in her federal habeas petition. The district court then conducted an evidentiary hearing on April 21, 2010, which focused primarily on Petitioner's claims of ineffective assistance of counsel.

On October 29, 2010, the district court issued a decision conditionally granting Petitioner the writ of habeas corpus, reasoning that errors made by defense counsel in relation to Petitioner's evidence of battered spouse syndrome justified the issuance of the writ. *See Seaman v. Washington*, No. 08-cv-14038, 2010 WL 4386930, at *12 (E.D. Mich. Oct. 29, 2010) ("*Seaman II*"). The district court denied the remainder of Petitioner's claims but granted a certificate of appealability for several of them.[1]

---

[1]Specifically, Petitioner was granted a certificate of appealability on her claims: "that counsel was ineffective in failing to object to the jury instructions, that the prosecutor committed misconduct when she argued that Petitioner removed [a cover from the hatchet], and that the prosecutor committed misconduct when she questioned Petitioner regarding her religious beliefs." *Seaman II*, 2010 WL 4386930, at *32. Because Petitioner failed to brief the prosecutorial misconduct claims on appeal, we deem them abandoned. *See Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998).

The state and Petitioner both filed timely notices of appeal, which have been consolidated before this Court. The district court had jurisdiction pursuant to 28 U.S.C. § 2254, and we exercise jurisdiction under 28 U.S.C. § 2253(a).

## ANALYSIS

### I. Legal Framework

We review the district court's legal conclusions *de novo* and its factual findings for clear error. *Smith v. Mitchell*, 567 F.3d 246, 255 (6th Cir. 2009).

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court shall not grant a habeas petition with respect to any claim adjudicated on the merits in state court unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to . . . clearly established federal law" if "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts." *Lundgren v. Mitchell*, 440 F.3d 754, 762–63 (6th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (internal quotations and alterations omitted). A state court decision is "an unreasonable application of clearly established federal law" if "the state court identifies the correct

governing legal principle but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* at 763. Clearly established federal law is determined by the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision. *Id.*

The Supreme Court has stressed that AEDPA's standard is "difficult to meet" and "demands that [state court] decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotations and citations omitted). A state court's factual determinations are entitled to a presumption of correctness, rebuttable only by "clear and convincing evidence" that the state court based its determination on an "unreasonable determination of the facts." *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007). In reviewing whether a state court decision was an unreasonable application of federal law, we must remain mindful that "an unreasonable application of federal law is different from an incorrect [one]," *Williams*, 529 U.S. at 410 (emphasis omitted), and we decline to award habeas relief where fairminded jurists could disagree on the correctness of the state court's decision. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Recently, the Supreme Court further limited review under § 2254(d) "to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S. Ct. at 1398. Thus, even if a petitioner was granted an evidentiary hearing pursuant to § 2254(e), the federal court must disregard newly obtained evidence that supports a claim that was previously adjudicated on the merits before the state court.[2] *Id.* *Pinholster* suggested, however, that the prohibition on new evidence might

[2]Section 2254(e) provides an incentive to diligently investigate and pursue claims in state court by instructing that a petitioner who has "failed to develop the factual basis of a claim" before

6

not always apply, using as an example the hypothetical defendant who diligently pursues her claim through the state courts, but nevertheless presents a "new claim" in federal court because the court orders the production of evidence previously made unavailable during state court proceedings. *See id.* at 1401 n.10; *id*. at 1417–18 (Sotomayor, J. dissenting). The Supreme Court, however, has thus far declined to decide "where to draw the line between new claims and claims adjudicated on the merits." *Id*. at 1401 n.10.

With this framework in mind, we review Petitioner's claims for relief.

## II.      Ineffective Assistance of Counsel

### A.      The *Strickland v. Washington* Standard

Petitioner claims that she suffered ineffective assistance of counsel when her defense counsel (1) failed to fully develop her claim that she was a victim of battered spouse syndrome; and (2) failed to object to a deficient jury instruction. Both claims are analyzed under the familiar two-part performance and prejudice framework first established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Darden v. Wainwright*, 477 U.S. 168, 184 (1986).

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the

the state courts should not be granted an evidentiary hearing on federal review, unless the claim relies on (1) a new, previously unavailable rule of constitutional law, or (2) facts that could not have been previously discovered through the exercise of due diligence. *See Williams*, 529 U.S. at 435.

conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. "Ineffectiveness is not a question of basic, primary, or historical fact," but rather is "a mixed question of law and fact." *Id.* at 698.

This Court determines whether counsel's performance was deficient by reference to an objective standard of reasonableness, based on prevailing professional norms. *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997) (citing *Strickland*, 466 U.S. at 687–88). Counsel's performance must be assessed based on the standards and circumstances in place at the time of representation, rather than viewed with the benefit of hindsight. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Because of the inherent difficulties in making this determination, this Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The burden rests on the defendant to overcome the presumption that the challenged conduct might be considered sound trial strategy. *Id.*

In order to show prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome"; certainty of a different outcome is not required. *Id.* "Thus, an analysis focusing solely on mere outcome determination, without attention to whether the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

B.      **Battered Spouse Syndrome Claim**

1.      **Background**

In Petitioner's first claim for relief, she argues that her counsel was ineffective in handling the expert witness testimony related to her claim that she suffered from battered spouse syndrome. Specifically, Petitioner claims that her counsel should have asked her primary expert to interview her prior to trial and that her counsel misinterpreted the full scope of expert testimony that would have been admissible under Michigan law. According to Petitioner, these errors undermined the effectiveness of the evidence in her favor and left the jury without an expert opinion as to whether her actions were consistent with those of a person suffering from BSS.

The record does not establish whether either party filed a pre-trial motion regarding the admission of BSS testimony. However, the record reveals that the subject was discussed during a pre-trial hearing. In a colloquy between defense counsel and the trial court, a mutual understanding was reached as to the admissibility of Petitioner's BSS testimony. Defense counsel and the trial court agreed that, in accordance with Michigan law, Petitioner's BSS experts could testify generally about the syndrome and its symptoms, but the experts would not be permitted to testify as to the particulars of Petitioner's case, nor could they provide an opinion as to whether Petitioner actually suffered from the syndrome. As the trial court described, following the introduction of general testimony about the syndrome, "it [would be] up to the jury to take a look at [the expert's] testimony, and make a determination, does [Petitioner] fit [the description of a BSS victim]."

In accordance with the trial court's ruling, the expert testimony regarding BSS was only general in nature. Defense expert Michael Abramsky, Ph.D., testified that he met Petitioner on two separate

occasions, reviewed the case file, and performed a battery of psychological tests. From this background, Dr. Abramsky recommended referring Petitioner's case to an expert on battered spouse syndrome. Dr. Abramsky also explained BSS generally, typical patterns of domestic abuse, and the syndrome's effects on a battered spouse. Dr. Abramsky did not testify about Petitioner's specific conduct, the psychological tests he performed, or relate the syndrome to the particulars of Petitioner's case.

Lenore Walker, Ed.D., also appeared on Petitioner's behalf as a leading researcher in the field of BSS studies. During testimony that lasted approximately an hour, Dr. Walker testified about the general characteristics of the syndrome and the typical traits of a batterer and a battered spouse. She explained that the pattern of domestic violence in such a relationship is cyclical, with the period when a spouse is preparing to leave the relationship as the most violent and dangerous. Dr. Walker admitted on cross-examination that she did not personally meet with Petitioner, but she testified that she did not do so because the law did not permit her to provide a personal opinion about Petitioner's individual case. Dr. Walker was not asked and did not testify about whether Petitioner's actions were consistent with those of a battered spouse.

### 2. Procedural Posture and Scope of Review

On direct appeal, the Michigan Court of Appeals summarily rejected Petitioner's ineffective assistance claim, finding that, "[i]n light of the restrictions placed on expert testimony regarding [BSS], defendant's allegations are insufficient to overcome the presumption that trial counsel was effective." *Seaman I*, 2007 WL 466003, at *17. The Michigan Court of Appeals also concluded that defense counsel did not perform deficiently in failing to have Dr. Walker interview Petitioner, because

under Michigan law "the experts were not permitted to testify regarding the specifics of the testing . . . [or to] conclud[e] that defendant was a battered woman." *Id*.

Petitioner renewed her claim in her federal habeas case. In analyzing Petitioner's ineffective assistance of counsel claim, the district court conducted an evidentiary hearing at which defense counsel and Dr. Walker both testified. In granting Petitioner relief, the district court extensively reviewed Michigan's case law regarding the admissibility of BSS testimony. *Seaman II*, 2010 WL 4386930, at *9–11. Although the district court recognized that "no Michigan Supreme Court case has specifically addressed the admissibility of expert testimony in the [specific] context presented in this trial," it concluded that the Michigan courts would allow—contrary to the understanding of defense counsel, the trial court, and the Michigan Court of Appeals—an expert witness to testify "that a defendant's actions were consistent with [that of] someone suffering from battered spouse syndrome." *Id*. at *12. Accordingly, the district court found that "reasonable efforts to argue [the] case required defense counsel to attempt to introduce as much favorable testimony regarding battered spouse syndrome as [the law] allowed." *Id*. Likewise, the district court reasoned that "an attorney acting within the wide range of reasonably competent assistance would have arranged for Dr. Walker to personally evaluate Petitioner." *Id*. Accordingly, the district court concluded that defense counsel performed deficiently.

The district court then addressed *Strickland*'s prejudice prong, and emphasized the importance of the expert testimony and the relative weakness of the case against Petitioner. Because "[battered spouse syndrome] was the defense's only defense" and because "the prosecution did not present overwhelming evidence Petitioner was guilty of first-degree premeditated murder," the district court

concluded that defense counsel's errors created "a reasonable probability that at least one juror would have struck a different balance had [] additional [BSS] testimony been presented." *Id*. at \*12, 15.

Before turning to the merits, we first must address the state's argument that this claim is limited by the Supreme Court's recent decision in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). The state contends that *Pinholster* precludes consideration of any of the evidence developed for the first time at the federal evidentiary hearing, specifically the testimony of defense counsel and Dr. Walker. Petitioner argues that *Pinholster* does not apply because the state court failed to truly reach the merits of her ineffective assistance claim.

This claim was clearly decided on the merits and is thus subject to review under § 2254(d) and *Pinholster*'s limitations. *See Harrington*, 131 S. Ct. at 783–84. However, we need not dwell on this matter, because for several reasons, *Pinholster* is not outcome-determinative in the instant case. For one, the parties concede that the limitations placed on the BSS expert testimony were the direct product of defense counsel and the trial court's agreed-upon interpretation of Michigan law.[3] Accordingly, because defense counsel's strategic decision-making or lack thereof is not in dispute, whatever testimony was elicited at the federal evidentiary hearing is of limited import. Setting aside defense counsel's testimony pursuant to *Pinholster*, therefore, does not change our analysis of Petitioner's ineffective assistance claim.

---

[3]Because the parties do not press the point, we make no judgments about whether defense counsel simply misunderstood the unsettled nature of Michigan's law, and therefore was incapable of developing a suitable strategy about the BSS testimony, or whether defense counsel understood the law correctly, but might have harbored strategic motivations for pursuing a more limited defense. In any event, because of *Pinholster*'s requirement that we are limited to the state court record, the case bars the introduction of the testimony that would be necessary to explore this issue any further.

As for Dr. Walker, the Michigan Court of Appeals noted that it considered, by way of an affidavit, at least some of the expert testimony that Dr. Walker stated would have been proffered at trial had she been permitted to directly link the symptoms of BSS to the particulars of Petitioner's behavior. Accordingly, even if Dr. Walker had expounded further at the federal evidentiary hearing, the state courts nevertheless had already considered the basic parameters of her proposed testimony and its relative value when they denied Petitioner's ineffective assistance of counsel claim on the merits. Therefore, we can fairly conclude that the Michigan Court of Appeals reweighed the evidence and determined that Petitioner's defense would not have succeeded even with additional testimony from Dr. Walker.

Accordingly, although we set aside the evidence elicited at the federal evidentiary hearing pursuant to *Pinholster*, this ruling does not especially change our analysis on the merits for any practical purpose.

### 3. Merits Analysis

We turn next to the merits of Petitioner's ineffective assistance of counsel claim. Having carefully reviewed the district court's analysis, we must reverse. Although the district court cited *Strickland* and professed to apply its two-pronged performance and prejudice review, we are convinced that Petitioner's claim was not analyzed under the appropriate legal standard. The district court erroneously focused most of its analysis on interpreting Michigan case law regarding the admissibility of BSS testimony. However, "federal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). And, as the Supreme Court has repeatedly underscored, inquiry

into issues of state law "is no part of a federal court's habeas review of a state conviction. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

AEDPA review provides that a federal court's consideration of state law is limited, deferential, and considered only to the extent required to answer whether the application of state law violated the petitioner's federal constitutional rights. *Id*. at 68; 28 U.S.C. § 2241. In all events, an application for federal habeas corpus relief premised under § 2254(d)(1) review may be granted only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). However, starkly absent from the district court's analysis was any discussion of cases applying *Strickland* or any other source of clearly established federal law.

The district court's error was a serious one. Under AEDPA review, the appropriate question was not whether defense counsel misinterpreted the admissibility of BSS testimony; rather, the sole inquiry should have been whether the state court unreasonably applied clearly established federal law when it concluded that Petitioner did not suffer ineffective assistance of counsel. *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Williams*, 529 U.S. at 412. On this much narrower question, Petitioner is clearly not entitled to relief.

### a. Performance

As noted above, Petitioner faced an uphill challenge from the start, inasmuch as federal habeas relief rarely can turn on the misapplication of state law. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68. Accordingly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id*. at 67–68. Thus, whether or not

14

defense counsel and the state court misinterpreted Michigan law, Petitioner is not entitled to federal habeas relief unless she can demonstrate that "counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart*, 506 U.S. at 372 (1993).

According to clearly established Supreme Court precedent, "[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles [her]." *Id.* at 372. Therefore, federal habeas review "validates reasonable, good-faith interpretations of existing precedents made by state courts even [if] they are shown to be contrary to later decisions." *Id.* at 372–73 (quoting *Butler v. McKellar*, 494 U.S. 407, 414 (1990)) (internal quotation marks omitted).

As the district court recognized, the evidentiary question at issue here has never been squarely answered by the Michigan courts. Our obligation under AEDPA review is not to theorize about what state law would or would not have permitted to be admitted. Rather, our only duty is to determine how the unsettled nature of the law affects *Strickland*'s parameters of constitutionally adequate representation.

As the Supreme Court recently explained, "a lack of clarity in the law . . . affect[s] the scope and nature of counsel's advice." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1484 n.10 (2009). Where the law is "truly clear," the duty to give correct advice is "equally clear." *Id.* However, where the law is "unclear or uncertain," counsel's duty "is more limited." *Id.* Ultimately, "the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of [the] client by attempting a useless charade." *United States v. Cronic*, 466 U.S. 648, 656 n.19 (1984).

15

In applying *Strickland*'s performance prong, we are mindful that the Sixth Amendment does not obligate counsel to pursue legal theories that are not available under the law. *Id.* At best, the admissibility of BSS testimony remains an open question under Michigan precedent. At worst, the state courts have spoken, and they have spoken against Petitioner's interpretation of Michigan law. *See Seaman I*, 2007 WL 466003, at \*17; *see also In re Humphrey*, No. 287759, 2009 WL 695396, at \*1 (Mich. Ct. App. Mar. 17, 2009). Under these restrictions, we cannot deem defense counsel's failure to argue for broader admission of evidence to constitute deficient performance.

Moreover, we cannot conclude that BSS testimony was excluded because counsel simply failed to research the law or failed to investigate the facts of Petitioner's case. *Cf. Dando v. Yukins*, 461 F.3d 791, 798–99 (6th Cir. 2006) (granting habeas relief where counsel conducted no investigation into the admissibility of BSS testimony). Likewise, there is nothing on record to show that defense counsel failed to pursue or was refused access to psychiatric examinations or the advice of BSS experts. *Cf. Powell v. Collins*, 332 F.3d 376, 381 (6th Cir. 2003), and *Ake v. Oklahoma*, 470 U.S. 68, 81 (1985) (finding a denial of due process where defendant denied access to a psychologist). Instead, the record makes perfectly clear that trial counsel thoroughly investigated the possibility of a BSS defense, hired two experts on the subject, arranged for Petitioner to be examined by one of those experts, and vigorously argued for the admission of a battered spouse defense. Given these efforts, we cannot say that counsel was constitutionally deficient.

Finally, we have considered and reject the possibility that Petitioner's trial was fundamentally unfair because her counsel failed to argue for the admission of evidence that she would have been entitled to as a matter of due process. *See Clark v. Arizona*, 548 U.S. 735, 753 (2006); *Estelle*, 502

16

U.S. at 71–72. As with our sister circuits who have confronted similar arguments, we find that Petitioner is not entitled to relief. *See Michael v. Crosby*, 430 F.3d 1310, 1320–21 (11th Cir. 2005); *Lannert v. Jones*, 321 F.3d 747,751–53 (8th Cir. 2003); *Anderson v. Goeke*, 44 F.3d 675, 681 (8th Cir. 1995). Accordingly, Petitioner cannot meet *Strickland*'s performance prong because she has not shown that defense counsel's interpretation of state law, even if erroneous, was either constitutionally deficient or otherwise deprived her of her federal constitutional rights.

### b. Prejudice

In addition, Petitioner cannot meet *Strickland*'s prejudice prong. Finding otherwise would require us to draw two, not insignificant, assumptions: that had defense counsel raised the argument above, (1) there is a reasonable probability that the trial court would have permitted the additional, excluded expert testimony in support of the BSS claim; and (2) there is a reasonable probability that the additional testimony would have resulted in a different verdict. *Strickland*, 466 U.S. at 694. As to the first assumption, the record shows that the trial court apparently harbored the same interpretation of the permissible scope of BSS evidence admissible under Michigan law as did defense counsel. And while it is certainly possible the court's interpretation might have changed as a result of counsel's argument, that possibility is speculative at best.

Furthermore, even had the additional expert testimony been admitted, we cannot conclude that there is a reasonable probability the jury's verdict would have been affected. In finding prejudice, the district court emphasized the difference between an argument supported by expert testimony versus one presented solely through defense counsel's argument. While we agree that having an expert testify that Petitioner's actions were in conformity with BSS would have strengthened the defense, we cannot

17

ignore the fact that defense counsel raised the same argument for the jury during opening and closing statements. Although, concededly, the jury was instructed by the trial judge that arguments of counsel are not evidence, the jury was not deprived of any of the information or inferences necessary to link the general symptoms of BSS to the specific facts of Petitioner's case. *See Clark*, 548 U.S. at 778 (noting that states enjoy wide latitude "to channel . . . expert testimony . . . on the insanity defense . . . .") In considering the limited expert testimony which was admitted, along with the other evidence presented, the jury always remained the fact-finder ultimately charged with deciding whether or not Petitioner actually was suffering from the effects of BSS when she killed her husband.

Finally, BSS is not itself a defense under Michigan law. *See People v. Christel*, 537 N.W.2d 194, 202 (Mich. 1995). Rather, the syndrome is recognized only as a mental condition about which a properly qualified expert may testify when "relevant and helpful to the jury in evaluating a [BSS] complainant's credibility." *Id*. at 196. Contrary to the district court's opinion, BSS was not "the defense's only defense." *Seaman II,* 2010 WL 4386930, at *12. In fact, the only true defense available was self-defense. Even if the jurors believed that Petitioner was a battered spouse, they still could have rejected her claim of self-defense. Accordingly, in light of the limited legal status of the BSS testimony under Michigan law and the comparatively marginal degree of testimony that was excluded from trial, Petitioner has not proved the requisite level of prejudice required under *Strickland*'s high standard for relief.

### C.      Jury Instruction Claim

#### 1.      Background

Petitioner next contends that defense counsel rendered constitutionally deficient performance when he failed to object to an allegedly faulty jury instruction.

Michigan's standard jury instruction for first-degree premeditated murder contains four elements, with a possible fifth element appropriate in certain cases:

[(1)]    that the defendant caused the death of the victim;
[(2)]    that the defendant intended to kill the victim;
[(3)]    that the intent to kill was premeditated; and
[(4)]    that the killing was deliberate.

[(5)]    [that the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime].

*See* Mich. Crim. Jury Instructions. 16.1(6) at 16–3–4 (2d ed.) (brackets in last element in original).

A use note, in pertinent part, sets forth the following instructions:

Paragraph [(5)] may be omitted if there is no evidence of justification or excuse, and the jury is not being instructed on manslaughter or any offense less than manslaughter. Justification or excuse instructions may be inserted here, but they are more commonly given at a later time.

*Id*. at 16.1(6) n.4.  Finally, in the commentary, the instructions provide:

[T]he committee bracketed paragraphs on justification, excuse, and mitigation for use in appropriate cases.  Of course, when a defense of self-defense, accident or provocation is raised by the evidence, the prosecutor is required to disprove the defense beyond a reasonable doubt and the trial court is obligated to give the appropriate bracketed language.

*Id*. at 16.1 (commentary).

The trial court instructed the jury on the first four elements of the offense, but did not instruct on the bracketed language. However, later in the jury charge, the trial court extensively instructed the jury on the law of self-defense. Additionally, the trial court instructed the jury regarding the differences between first- and second-degree murder and provided the jurors with a chart contrasting the two offenses.

### 2.     Procedural Posture and Scope of Review

Though Petitioner presented an ineffective assistance of counsel argument with respect to the jury instructions on direct appeal, the Michigan Court of Appeals only addressed her underlying challenge to the jury instructions themselves, finding that Petitioner waived any challenge to the instructions by failing to object to them at trial. *See Seaman I*, 2007 WL 466003, at *18. Because only the underlying claim was adjudicated on the merits by the state courts and because the state has not argued that Petitioner's related *Strickland* claim is procedurally barred, we review the district court's analysis of Petitioner's ineffective assistance of counsel claim *de novo*. *Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004).

### 3.     Merits Analysis

We also evaluate this ineffective assistance of counsel claim under *Strickland*'s two-part standard. Accordingly, whether or not Petitioner was entitled to an instruction on the bracketed language as a matter of state law, she is only entitled to AEDPA relief if defense counsel's failure to request the additional language "fell below an objective standard of reasonableness" and created a "reasonable probability" that, had the omitted language been given, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. In conducting this analysis, "[i]f it is easier

to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," we may do so without deciding whether counsel's performance was deficient. *Id*. at 697. That approach is appropriate here.

A challenge to a jury instruction may not be judged in "artificial isolation" but must be considered "in the context of the instructions and the trial record as a whole." *Estelle*, 502 U.S. at 72. We are obligated to consider "whether there is a reasonable likelihood that the jury [] applied the challenged instruction in a way that violates the Constitution." *Id*. (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)) (internal quotation marks omitted). The category of infractions related to flawed jury instructions that can render an entire trial fundamentally unfair is narrow. *Id*. at 72–73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Having reviewed the instructions in their entirety, it is clear that the jury was appropriately instructed on Michigan's law of self-defense. *Seaman I*, 2007 WL 466003, at *10. The jurors were adequately advised that they could not convict Petitioner of first-or second-degree murder unless the state carried its burden of proof as to each element of the offense. *See Sandstrom v. Montana*, 442 U.S. 510, 520–21 (1979). In addition, the jurors were fully advised that self-defense is a complete defense under Michigan law. The instructions admonished the jurors to return a verdict of not guilty if they believed Petitioner had indeed acted in self-defense.

Accordingly, even if the bracketed language had been included, it would have been largely duplicative. The omitted language only underscored the "commonsense understanding of the instructions" that already accurately advised the jurors of the law. *Boyde v. California*, 494 U.S. at 380–81. Accordingly, the omission of the bracketed language did not so adversely affect the

21

fundamental fairness of the trial as to warrant federal habeas relief. *Id*. Therefore, Petitioner cannot show prejudice and her *Strickland* claim must fail.

## CONCLUSION

For the reasons stated above, we **REVERSE** the district court's judgment granting a writ of habeas corpus, **VACATE** the writ, and **REMAND** with instructions that the case be dismissed.